Case No. 25-5210

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**Randi Marie Bruce,**

*Plaintiff-Appellee,*

v.

**Adams and Reese, LLP**

*Defendant-Appellant.*

**On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville**

**Brief Of Appellee Randi Marie Bruce**

David Weatherman (BPR No. 029446)
THE WEATHERMAN FIRM, PLLC
256 Seaboard Lane
Suite E 105
Franklin, Tennessee 37067
(615) 779-6344

i

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## Disclosure of Corporate Affiliations and Financial Interests

Case Number:      25-5210

Case Name:      Randi Marie Bruce v.  Adams and Reese, LLP

Name of counsel:  David Weatherman

Pursuant to 6th Cir. R. 26.1 Randi Bruce makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

 /s/ David Weatherman                                       June 11, 2025
David Weatherman                                             Date

i

## Table of Contents

**Disclosure of Corporate Affiliations and Financial Interests**............................i

**Table of Contents**...................................................................... ii

**Table of Authorities**.................................................................. iii

**Statement in Support of Oral Argument** .................................................vi

**Statement of Jurisdiction**............................................................1

**Statement of Issues** .................................................................2

**Statement of the Case**...............................................................3

**Summary of Argument** ...............................................................7

**Argument** ...........................................................................8

    I.        Standard of Review.........................................................8

    II.       Argument .................................................................8

        A.   The Complaint Alleges a Coherent and Repeated Pattern of Sexual Harassment by a Supervising Attorney ................................9

        B.   Congress Amended the FAA to Carve Out Cases Involving Sexual Harassment—And That Carveout Must Be Given Effect .................15

        C.   The Weight of Judicial Authority Confirms the EFAA Invalidates Arbitration for the Whole Case.........................................17

        D.   Ms. Bruce's Case Relates to Her Sexual Harassment Allegations—and the Claims Are Inseparable .......................................18

**Conclusion**........................................................................21

**Certificate of Compliance**...........................................................22

**Certificate of Service**..............................................................23

**Addendum**.........................................................................24

# Table of Authorities

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................8

*Bady v. Ill. Cent. R.R. Co.*,
No. 2:21-cv-2693-MSN-cgc, 2023 U.S. Dist. LEXIS 41761 (W.D. Tenn. Mar. 13, 2023) ..................................................................................................12

*Baldwin v. TMPL Lexington LLC*,
2024 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 19, 2024) ..........................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................8

*Bell v. Hood*,
327 U.S. 678, 682–83 (1946) ........................................................................19

*Bray v. Rhythm Mgmt. Grp., LLC*,
2024 WL 4866450, at *22 (D. Md. Sept. 24, 2024) .....................................17

*Breeden v. Frank Brunckhorst Co., LLC*,
2020 U.S. Dist. LEXIS 69769, *1 (S.D.Ohio April 21, 2020) .....................11

*Carrethers v. Speer*,
698 F. App'x 266, 270 (6th Cir. 2017) ...........................................................8

*Clark v. UPS*,
400 F.3d 341 (6th Cir. 2005) .........................................................................11

*Clay v. FGO Logistics, Inc.*,
751 F. Supp. 3d 3, 20 (D. Conn. 2024) .........................................................17

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) .......................................................................................17

*Delo v. Paul Taylor Dance Found., Inc.*,
685 F. Supp. 3d 173, 180–81 (S.D.N.Y. 2023) .............................................17

*Diaz-Roa v. Hermes Law, P.C.*,
   757 F. Supp. 3d 498, 532–33 (S.D.N.Y. 2024)...............................................18

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)............................9

*Jackson v. Quanex Corp.*,
   191 F.3d 647, 658 (6th Cir. 1999)..................................................................10

*Johnson v. Everyrealm, Inc.*,
   657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023)......................................16, 17, 18

*Keys v. Humana*,
   684 F.3d 605, 609-10 (6th Cir. 2012) ..............................................................8

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011)...........................................................................................17

*Maine Cmty. Health Options v. United States*,
   590 U.S. 296, 314 (2020).................................................................................16

*Molchanoff v. SOLV Energy, LLC*,
   2024 WL 899384, at *5 (S.D. Cal. Mar. 1, 2024).........................................17

*Ogbonna-McGruder v. Austin Peay State Univ.*,
   91 F.4th 833, 844 (6th Cir. 2024) ...................................................................11

*Pedreira v. Kentucky Baptist Homes for Children, Inc.*,
   579 F.3d 722, 728 (6th Cir. 2009).....................................................................8

*Rayford v. Ill. Cent. R.R.*,
   489 Fed. App'x 1, 5-6 (6th Cir. 2012) ...........................................................10

*Simmons v. Himmelreich*,
   578 U.S. 621, 627 (2016).................................................................................16

*Turner v. Tesla, Inc.*,
   686 F. Supp. 3d 917, 926 (N.D. Cal. 2023) ...................................................18

*Williams v. Mastronardi Produce, Ltd.*,
   2024 WL 3908718, at *1 (E.D. Mich. Aug. 22, 2024) ..................................17

## STATUTES AND LEGISLATIVE MATERIALS

28 U.S.C. § 1331 ....................................................................................................1

9 U.S.C. § 16(a)(1) ...............................................................................................1

9 U.S.C. § 2 .........................................................................................................17

9 U.S.C. § 402(a).................................................................................................17

H.R. Rep. No. 117-234, at 4–6 (2022) ...............................................................22

Pub. L. No. 117-90, § 3 .......................................................................................17

**<u>Statement in Support of Oral Argument</u>**

Appellee Randi Bruce respectfully requests that the Court grant oral argument. Whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 applies to all claims in a lawsuit or only to sexual harassment claims is a matter of first impression for this Court.

## Statement of Jurisdiction

This Court has jurisdiction to review the February 25, 2025, order of the district court denying Adams and Reese's motion to compel arbitration under 9 U.S.C. § 16(a)(1). Order Denying Arbitration, RE 30, Page ID 803. The district court had subject matter jurisdiction under 28 U.S.C. § 1331 since the claims alleged in the complaint arose under federal law.

## **Statement of Issues**

The trial court correctly denied Appellant's motion to dismiss with regard to Appellee's sexual harassment claims and, by virtue of that ruling, correctly denied the Appellee's motion to compel arbitration. The court ruled on these issues:

1.  Whether Appellee stated a claim for sexual harassment.

2.  Whether Appellee's sexual harassment claim invalidates the arbitration agreement between the parties.

3.  Whether Appellee will have to litigate a sexual harassment claim in court while simultaneously litigating a disability claim in arbitration.

## Statement of the Case

This case arises from the termination of Randi Marie Bruce, a former paralegal at Adams and Reese LLP, after she was subjected to pervasive sexual harassment by her supervising attorney and requested accommodations for known disabilities.  The complaint alleges violations of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and the Tennessee Human Rights Act. *Amended Complaint, RE 18, PageID ## 496–497.*

The complaint specifically alleges that throughout her tenure, Ms. Bruce endured a pattern of sexual harassment by Pinson—her supervising attorney. The conduct began at her prior firm, Waller Lansden Dortch & Davis LLP, in 2019, and continued after her team transitioned to Adams and Reese in May 2022. *Id. at 525–533.* Pinson initially pressured Ms. Bruce to join him on after-hours outings, repeatedly ignoring her refusals. His conduct escalated to leaving concert tickets on her chair, appearing at locations where she was on personal dates, texting her late at night, and persistently urging her to meet him at bars. *Id. at 526–529.*

His language soon turned more explicitly sexual. After she was accepted to law school in 2020, he sent a message stating, "All those handjobs I gave really paid off." *Id. at 528.*  On February 2, 2022, he texted her at 12:30 a.m., asking to come to her home on her birthday. *Id. at 530.* As Ms. Bruce became more assertive in rejecting his advances, Pinson's attitude toward her turned cold and retaliatory.

3

Ms. Bruce began working for Adams and Reese in May 2022. At the time of her hire, Bruce disclosed her diagnoses—including PTSD, ADHD, insomnia, and persistent depressive disorder—and discussed her longstanding need for a flexible morning arrival schedule. *Id. at 500–501.* That accommodation was respected for several months without incident. *Id. at 501.* It was not until Pinson requested the office manager terminate Ms. Bruce following a minor scheduling miscommunication on September 30, 2022, that this accommodation was no longer respected. *Id. at 531.*

Pinson denied ever having made such a request when asked by Ms. Bruce, and Ms. Bruce expressed her confusion and concern about how to navigate Pinson's unreasonable behavior to both the office manager at Adams and Reese, Brooke Ponder, and her supervisor, Will Cheek.

Throughout this time, Pinson continued to condition his professional treatment of Ms. Bruce on her willingness to tolerate his inappropriate conduct. He leveraged praise, financial bonuses, and influence within the firm to pressure her compliance, which caused Ms. Bruce to feel that she had no choice but to accept Pinson's ongoing harassment to keep her job. *Id. at 526-527, 529-530, 532.* He gave her cash bonuses—$500 in January 2022 (immediately prior to Ms. Bruce rebuking his inappropriate behavior**)** and $750 in March 2023 **(**after Ms. Bruce concluded she had to endure his behavior to keep her job**)**—accompanied by

4

handwritten notes such as, "You are truly loved" and "I want you on this team for as long as you can tolerate us." *Id. at 499–500.*

In March 2023, Ms. Bruce experienced new side effects from a medication that exacerbated her existing symptoms. *Id. at 502.* On March 24, 2023, she was unexpectedly summoned to a meeting with Ponder, Pinson, and Cheek. There, she was reprimanded for tardiness and told her job was in jeopardy. *Id. at 502–504.* The meeting triggered a severe panic attack—Ms. Bruce began hyperventilating, trembling, and developed a nosebleed. Rather than pause the meeting, Ponder pressed forward, demanding Ms. Bruce to sign a memorandum pledging perfect attendance. *Id. at 504–505.*

In the weeks that followed, Ms. Bruce contacted Human Resources Director Linda Soileau, submitted medical documentation, and requested a reasonable accommodation. *Id. at 505–509.* The firm's response consisted of an invasive medical questionnaire and a broad waiver of privacy rights. *Id. at 514-516.* Ms. Bruce responded to the requested materials with follow up questions from her doctor and continued to work while awaiting action, but the firm never resolved her request. *Id. at 518-519.*

All the while, Pinson's harassment persisted, including public sexual remarks about Ms. Bruce's appearance, clothing, and personal life. *Id. at 530.* These included repeated uses of "Hoe no" with Ms. Bruce in front of colleagues and suggested

sending "Randi in a short skirt" to handle negotiations, and comments that it would be "hot" to see her engage in sexual acts with another paralegal on his desk. *Id. at 533.*

As Ms. Bruce's symptoms worsened and her accommodation requests went unaddressed, Adams and Reese ultimately terminated her employment. On May 11, 2023, less than an hour before a final law school exam, Ms. Bruce received an email stating that her employment had been terminated. *Id. at 524.* She was ordered to collect her belongings during work hours under supervision, while colleagues were instructed not to speak to her. *Id. at 524.*

This appeal is not about a procedural technicality; it is about the scope of statutory rights. The question before the Court is whether an employee alleging both disability discrimination and sexual harassment—claims arising from the same facts, decisionmakers, and employment relationship—may be forced into private arbitration. The district court correctly held that under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, this case must proceed in court. That decision is now before this Court for review.

## Summary of Argument

The District Court properly denied Adams and Reese's motion to dismiss, finding that Ms. Bruce plausibly alleged a hostile work environment based on facts showing repeated, unwelcome, and sexually inappropriate conduct by a supervising attorney.  The Court also correctly concluded that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") applies to this case.  Because Ms. Bruce's Amended Complaint stated a viable claim for sexual harassment sufficient to survive A&R's Rule 12(b)(6) motion, the EFAA renders the arbitration agreement unenforceable as to the entire case.

**Argument**

## I.    Standard of Review

When an appeal is raised following a denial of a motion to dismiss, the decision is reviewed *de novo*. *Carrethers v. Speer*, 698 F. App'x 266, 270 (6th Cir. 2017). The reviewing court must decide whether a Plaintiff sufficiently pleaded "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009). The reviewing court is to accept well-pleaded facts as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In order to "unlock the doors of discovery," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The liberal pleading standard applicable to civil complaints does not require that a discrimination or retaliation complaint set forth specific facts establishing a prima facie case, but it must allege facts that establish a plausible claim to relief. *See Keys v. Humana*, 684 F.3d 605, 609-10 (6th Cir. 2012).

## II.    Argument

Randi Bruce alleges disability discrimination and sexual harassment. For the purposes of this brief, Appellee will only address the sexual harassment claims as the discrimination claims are not at issue. The district court correctly ruled that

Appellee had a colorable claim for sexual harassment based on allegations. Appellee alleges numerous examples of Attorney Rob Pinson using offensive, demeaning, and abusive language and behavior when working with Ms. Bruce. While at Adams and Reese, Appellee endured almost weekly abuse from Pinson both in person and during TEAMS meetings for their work group. From this, the court correctly interpreted that the Complaint contained examples of harassment that show a coherent and repeated pattern.

Having established that Appellee made a plausible claim to relief regarding sexual harassment, the district court correctly denied Appellant's Motion to Compel Arbitration. The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022, invalidates pre-dispute arbitration agreements in cases that relate to sexual harassment. Because this case relates to a sexual harassment claim, the arbitration agreement is invalid.

### A.    The Complaint Alleges a Coherent and Repeated Pattern of Sexual Harassment by a Supervising Attorney

Title VII protects employees from a "workplace [] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations and quotation marks omitted).

9

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview. . . ." *Id.* at 21-22; *see also Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (The alleged conduct "must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." (internal citations and quotation marks omitted)).

Appellant cites *Rayford v. Ill. Cent. R.R.*, 489 Fed. App'x 1, 5-6 (6th Cir. 2012) presumably to argue that the alleged conduct in this case is insufficient to support a claim. But *Rayford* is entirely inapposite. That case involved a motion for judgment on the pleadings **after** a full trial had been conducted and both parties had engaged in discovery and presented their evidence. The court's ruling in *Rayford* came only after the plaintiff had the opportunity to develop the record, and the jury was unable to reach a verdict. Here, by contrast, Appellant is attempting to prevent this case from ever reaching discovery or trial. The procedural posture could not be more different. *Rayford* involved a post-trial analysis of a fully developed record; this case involves a pre-trial effort to compel arbitration and silence the claims before they are ever heard. The comparison fails.

10

Appellant also relies on *Breeden v. Frank Brunckhorst Co., LLC*, 2020 U.S. Dist. LEXIS 69769, *1 (S.D.Ohio April 21, 2020) for the same reasons as *Rayford*, but the comparison is equally misplaced. In *Breeden*, the court dismissed Plaintiff's hostile work environment claims because she failed to allege that any harassment was directed at her personally, that she was singled out, or that the conduct interfered with her ability to perform her job. *Id.* at *6–11. None of those pleading deficiencies are present here. Ms. Bruce has alleged years of repeated, direct, and escalating harassment by a supervising attorney. She has identified the harasser, described the conduct in detail, and explained how it affected her mental health, working conditions, and ultimately her employment. *Breeden* involved an absence of facts. This case involves a surplus. The distinction matters.

Appellant cites *Clark v. UPS*, 400 F.3d 341 (6th Cir. 2005), but again relies on a decision applying a different procedural standard. Moreover, *Clark* does not help Appellant on the merits: although the court dismissed one plaintiff's harassment claim, it upheld another's, finding that her allegations of ongoing, unwanted conduct and attention were sufficient to proceed. *Id.* at 352. Ms. Bruce's allegations mirror that successful claim—not the failed one.

Appellant cites *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 844 (6th Cir. 2024), a case involving racial discrimination. While this case analyzed

11

a hostile work environment claim, the allegations are significantly different from those present in this case.

Finally, Appellant cites, *Bady v. Ill. Cent. R.R. Co.*, No. 2:21-cv-2693-MSN-cgc, 2023 U.S. Dist. LEXIS 41761 (W.D. Tenn. Mar. 13, 2023). This case involved a male co-worker being harassed by two other male co-workers. The Court ruled that the alleged conduct was too infrequent as it only occurred two or three times over two years. *Id*. at *9. The Court also ruled the harassment had no basis in sex or gender. *Id*. at *13.

None of these cases involve someone as senior as a law firm partner making sexual advances and demeaning comments to a victim as vulnerable as a paralegal working her way through law school. When analyzing sexual harassment cases, context matters.

The Amended Complaint presents a sober account of repeated, unwelcome conduct by Ms. Bruce's supervising attorney, Rob Pinson, extending across multiple years and legal employers. These events, described with specificity and continuity, form the factual core of her sexual harassment claim under Title VII of the Civil Rights Act. *Amended Complaint*, *RE 18, PageID ## 525–530.*

Pinson's conduct began in 2019, while the parties were employed at Waller Lansden Dortch & Davis LLP, and persisted following their transition to Adams and Reese LLP in 2022. The complaint recounts multiple invitations by Pinson to join

him at social events, many of which were declined, but followed by additional pressure. On July 26, 2019, after Ms. Bruce declined to attend a concert, Pinson left tickets on her chair and continued to text her during the event. On August 16 of that year, he offered to relieve her of work obligations by requesting approval from human resources if she would join him for drinks. *Id. at 526.*

Over time, the nature of the communications shifted. On February 2, 2022, Pinson sent a text message at 12:30 a.m. proposing a personal visit to Ms. Bruce's home. *Id. at 530.* After her admission to law school, he wrote to her, stating: "All those handjobs I gave really paid off." *Id. at 528.* The complaint records this comment without embellishment and without need for interpretation; its meaning is apparent.

When Ms. Bruce's legal team moved to Adams and Reese, the inappropriate behavior persisted and intensified.  Although Pinson was in the office less frequently, his harassment persisted – both during his in-person appearances and through weekly meetings, whether held in person or via Microsoft Teams. Pinson regularly used the phrase "Hoe no" in conversation with Ms. Bruce on team meetings and suggested that the team "send Randi in a short skirt" for negotiations. On April 19, 2023, he remarked that it would be "hot" to observe Ms. Bruce and another paralegal "engaging in sexual acts on his desk." *Id. at 532-533.*

13

These remarks were not isolated. They were embedded in a pattern of behavior that included personal gifts, cash bonuses, and handwritten notes containing affectionate language. In January 2022, Pinson gave Ms. Bruce a $500 bonus with a note stating: "You are truly loved and a part of the AR team family. I do not know what I would do without you. . . . Yours Always, Rob." *Id. at 499.* Another bonus of $750 in March 2023 came with another personal note. *Id. at 499-500.*

When Appellee became more assertive in rejecting his advances and stopped responding to these overtures, the tone of the relationship changed. While working for Adams and Reese, on September 30, 2022, following a minor scheduling issue, Pinson requested from Brooke Ponder that Appellee be terminated. *Id. at 531.* Pinson's treatment of Ms. Bruce was consistently conditioned on her tolerance of his conduct. He leveraged praise, personal financial bonuses, and influence on human resources and within the firm as further leverage, which caused Ms. Bruce to feel that she had no choice but to accept Pinson's ongoing harassment to keep her job. *Id. at 526-527, 529-530, 532.*

This is not a case of generalized dissatisfaction or speculative grievance. It is a case in which a plaintiff has pled, with clarity and detail, conduct that—if proven— falls squarely within the statutory prohibitions of Title VII. The allegations are not novel. They are sadly familiar: a senior employee, vested with power, persistently

testing the bounds of propriety until rebuffed, and then retaliating when professional boundaries are reasserted. This case is more serious still, because the perpetrator is an officer of the court with the heightened duties and responsibilities that come therewith.

Whether these facts ultimately warrant relief is not the question at this stage. The only question is whether the plaintiff has alleged enough to invoke the protections afforded by Congress to victims of workplace harassment. She has. And it is that invocation which triggers the EFAA's bar on compelled arbitration of her case.

**B.   Congress Amended the FAA to Carve Out Cases Involving Sexual Harassment—And That Carveout Must Be Given Effect**

In 2022, Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA")—a targeted reform of the Forced Arbitration Act ("FAA"). Prior to this legislation, the FAA highly favored arbitration. The EFAA carved out a categorical exception: when a case involves a sexual harassment or assault dispute, and the plaintiff elects to proceed in court, any pre-dispute arbitration clause is rendered unenforceable.

Adams and Reese does not dispute that it entered into a pre-dispute arbitration agreement with Ms. Bruce. Nor does it dispute that Ms. Bruce has brought a claim of sexual harassment. Its contention is narrower: it argues that even if the EFAA

15

applies, the arbitration agreement must still be enforced as to claims that do not directly allege harassment.

But that is not what Congress wrote. And it is not what the law now requires.

Section 2 of the FAA now makes arbitration agreements enforceable "except as otherwise provided in chapter 4." 9 U.S.C. § 2. Chapter 4 is the EFAA. It provides that "no pre-dispute arbitration agreement shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual harassment dispute." 9 U.S.C. § 402(a). Congress's word choice was deliberate. It did not speak of "claims." It spoke of the "case," a term which encompasses the entire legal proceeding—facts, parties, and causes of action together. See *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023). Where Congress meant "claim," it used the word elsewhere in the same statute. See Pub. L. No. 117-90, § 3. The presumption that different words mean different things is not a mere technicality—it is the starting point of faithful statutory interpretation. *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 314 (2020); *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("Congress says what it means and means what it says.").

The practical consequence of Congress's word choice is clear: when a plaintiff alleges sexual harassment, and the case relates to that allegation, the EFAA applies to the entire proceeding. Arbitration must yield.

16

### C.    The Weight of Judicial Authority Confirms the EFAA Invalidates Arbitration for the Whole Case

Adams and Reese seeks refuge in the FAA's historic preference for arbitration, citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985), and *KPMG LLP v. Cocchi*, 565 U.S. 18 (2011). But those cases were decided based on the FAA as it existed then – not as it exists now.  The FAA no longer operates in isolation. Congress amended it to include a critical exception: the longstanding pro-arbitration policy does not apply when the EFAA is invoked.  That exception controls.

Federal courts have applied this exception consistently. The EFAA has been interpreted by courts across the country to invalidate arbitration agreements in their entirety when a sexual harassment dispute is present and the plaintiff elects a judicial forum. See, e.g., *Johnson*, 657 F. Supp. 3d at 558–61; *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180–81 (S.D.N.Y. 2023); *Clay v. FGO Logistics, Inc.*, 751 F. Supp. 3d 3, 20 (D. Conn. 2024); *Molchanoff v. SOLV Energy, LLC*, 2024 WL 899384, at *5 (S.D. Cal. Mar. 1, 2024); *Bray v. Rhythm Mgmt. Grp., LLC*, 2024 WL 4866450, at *22 (D. Md. Sept. 24, 2024); *Williams v. Mastronardi Produce, Ltd.*, 2024 WL 3908718, at *1 (E.D. Mich. Aug. 22, 2024).

These courts have not strained to find ambiguity. They have done what courts are charged to do: apply the law as written.

### D. Ms. Bruce's Case Relates to Her Sexual Harassment Allegations—and the Claims Are Inseparable

Adams and Reese argues that Ms. Bruce's remaining claims should be severed and sent to arbitration, on the theory that they do not "relate to" her sexual harassment allegations. The premise is wrong. Her claims all relate to the same employment relationship, the same supervisory authority, and the same set of facts. They are not unrelated—they are inextricably intertwined.

The hypothetical concern that plaintiffs will assert unrelated claims just to trigger the EFAA is overstated. By design, the statute only applies to cases that "relate to" a sexual harassment or assault dispute—and courts have consistently held that this includes claims arising from the same employment relationship, personnel decisions, factual record, and parties. *See, e.g.*: *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 532–33 (S.D.N.Y. 2024) (EFAA applies where claims stem from same relationship and events); *Baldwin v. TMPL Lexington LLC*, 2024 U.S. Dist. LEXIS 148291 (S.D.N.Y. Aug. 19, 2024), at *8 (labor claims "factually and temporally" tied to harassment claims fall within scope of EFAA); *Johnson v. Everyrealm, Inc*, 657 F. Supp. 3d at 562 n.23 (claims "clearly properly joined" where arising from same employment); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 926 (N.D. Cal. 2023) (wage and injury claims "intertwined" with harassment claims).

That same connection exists here. Ms. Bruce's allegations all stem from her employment at Adams and Reese and from her supervisory relationship with Pinson. Ms. Bruce has alleged a persistent course of sexual harassment by her direct supervisor, Pinson, spanning from 2019 to 2023. These allegations are not vague or conclusory. They are particularized, documented, and detailed across numerous pages. *Amended Complaint, RE 18, PageID ## 525–530.* She alleges that Pinson's misconduct directly influenced her working conditions, her mental health, and ultimately her dismissal. Her ADA claims are tied to the same decisionmakers and the same factual setting. The connection is not speculative—it is plain.

Congress drafted the EFAA to address precisely this situation. The House Judiciary Committee warned that without this reform, victims of sexual harassment would be forced into "a private system of arbitration that often favors the company over the individual" and that often insulates wrongdoing from public scrutiny. H.R. Rep. No. 117-234, at 4–6 (2022). Congress responded not with aspiration, but with legislation.

Adams and Reese offers a familiar refrain—that applying the EFAA to the entire case will invite "manufactured" harassment claims aimed at evading arbitration. But that concern is illusory. Courts have ample tools to dismiss frivolous or insubstantial claims. See *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). What they

19

lack is license to rewrite congressional enactments for fear that someone might misuse them.

Here, the allegations have already survived a Rule 12(b)(6) motion. The district court found them plausible. The record does not show abuse of the EFAA—it shows its proper use.

## Conclusion

Congress did not amend the FAA with ambiguity—it amended it with intent. Adams and Reese now asks this Court to ignore that intent by reading the EFAA narrowly: in defiance of the statute's plain text, at odds with the overwhelming weight of judicial authority, and contrary to the very purpose Congress enacted the law to serve.

The law now provides that when a plaintiff alleges sexual harassment and elects a judicial forum, arbitration is no longer mandatory. Ms. Bruce has done precisely that. Her allegations are not only plausible—they are specific, substantiated, and deeply interwoven with every other claim she has brought because her remaining claims arise from the same facts, relationships, and period of employment.

Yes, this new rule departs from the FAA's old doctrine. Yes, it will prevent more sexual harassment cases from being funneled into private arbitration. That is the point. Congress changed the law to fix a problem. This Court's job is not to second-guess that judgment or rewrite the law—but to apply it.

The district court's decision was correct. It should be affirmed in full.

> */s/David Weatherman*
> David Weatherman (TNBPR 29446)
> Counsel for Appellee

21

## <u>Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 5,215 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and this Court's Rule 32(b)(1).This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

**/s/ David Weatherman**

David Weatherman (TN BPR No. 029446)

22

**Certificate of Service**

I hereby certify that, on Wednesday, June 11, 2025, I caused the foregoing brief and addendum to be filed electronically with the Court, where they are available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a notice of electronic filing constituting service. I certify that all parties required to be served have been served.


*/s/David Weatherman*

David Weatherman

23

**Addendum**

Designation of Relevant Originating Court Documents

1. Complaint (Page ID 1-49)

2. Motion to Compel Arbitration (Page ID 79-81)

3. Motion to Dismiss (Page ID 287-89)

4. Amended Complaint (Page ID 496-539)

5. Second Motion to Dismiss (Page ID 544-47)

6. Arbitration Agreement (Page ID 102-105)

7. Memorandum Opinion (Page ID 776-802)

8. Order Denying Arbitration (Page ID 803)

9. Notice of Appeal (Page ID 804-805)

Relevant Statutes

10. Ending Forced Arbitration Act