Case No. 25-5210

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**Randi Marie Bruce**,

Plaintiff-Appellee

v.

**Adams and Reese, LLP**,

Defendant-Appellant

On Appeal from the United States District Court
for the Middle District of Tennessee

---

**Appellant's Petition for Rehearing and
Petition for Rehearing *En Banc***

---

Aaron G. McLeod
Brent E. Siler
ADAMS & REESE, LLP
1901 6th Avenue North
Suite 1110
Birmingham, AL 35203
(205) 250-5000
aaron.mcleod@arlaw.com
brent.siler@arlaw.com

# Table of Contents

TABLE OF AUTHORITIES...............................................................iii

STATEMENT OF GROUNDS FOR GRANTING REHEARING
*EN BANC*................................................................................. 1

ARGUMENT .................................................................................3

1.    The majority's opinion directly conflicts with Sixth Circuit and
      Supreme Court precedent on hostile-work-environment claims under
      Title VII..........................................................................3

      A.   *This Court's law on the "high bar" plaintiffs must clear to state a
           hostile-work-environment claim has been consistent for decades—until
           now* ..........................................................................3

      B.   *Sixth Circuit law was, until the opinion here, in accord with Supreme
           Court precedent* .............................................................6

      C.   *The panel has broken with this Court's standard for severe or
           pervasive conduct, and if not corrected, in this circuit three comments
           will now violate Title VII*................................................7

2.    The panel relied on allegations that this Court and the Supreme
      Court insist must be disregarded.......................................9

3.    The panel's disregard of Sixth Circuit law, in a case of first impression
      under a statute often invoked in Title VII cases, merits *en banc* review
      to prevent inconsistent legal standards. ...........................14

CONCLUSION...................................................................... 16

CERTIFICATE OF COMPLIANCE ..................................... 16

CERTIFICATE OF SERVICE .............................................. 17

PANEL OPINION.......................................................Attachment

# Table of Authorities

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................ 8,9,10,11,13

*Bates v. Green Farms Condominium Ass'n*,
    958 F.3d 470 (6th Cir. 2020) ....................................................2,10,11

*Bell v. Bell*,
    512 F.3d 223 (6th Cir. 2008) ...........................................................14,15

*Bowman v. Shawnee State University*,
    220 F.3d 456 (6th Cir. 2000) ...........................................................5

*Boxill v. O'Grady*,
    935 F.3d 510 (6th Cir. 2019) ....................................................2,10,13

*Bruce v. Adams and Reese, LLP*,
    2026 WL 523180 (6th Cir. 2026) ...............................1,7,8,9,12,13,15

*Burnett v. Tyco Corp.*,
    203 F.3d 980 (6th Cir. 2000) ...........................................................4

*Clay v. UPS, Inc.*,
    501 F.3d 695 (6th Cir. 2007) ...........................................................4

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ........................................................................ 1,6

*Fluker v. Ally Fin., Inc.*,
    2025 WL 1827747 (6th Cir. 2025) .................................................10,13

*Handy-Clay v. City of Memphis*,
    695 F.3d 531 (6th Cir. 2012) ........................................................... 10

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993)............................................................ 3,7

*Hawkins v. Anheuser-Busch, Inc.*,
    517 F.3d 321 (6th Cir. 2008)...............................................8

*Kellar v. Yunion, Inc.*,
    157 F.4th 855 (6th Cir. 2025) ....................................... 4,15

*Khalaf v. Ford Motor Co.*,
    973 F.3d 469 (6th Cir. 2020).............................................4,5

*Morris v. Oldham County Fiscal Court*,
    201 F.3d 784 (6th Cir. 2000)...............................................5

*Nathan v. Great Lakes Water Authority*,
    992 F.3d 557 (6th Cir. 2021) ................................. 1,3,4,5,6

*Phillips v. UAW Int'l*,
    854 F.3d 323 (6th Cir. 2017)...........................................4,5

*White v. Burlington N. & Santa Fe Ry. Co.*,
    364 F.3d 789 (6th Cir. 2004) ............................................ 14

*White v. Coventry Health & Life Ins. Co.*,
    680 F. App'x 410 (6th Cir. 2017).................................... 10

*Williams v. Gen. Motors Corp.*,
    187 F.3d 553 (6th Cir. 1999) ..............................................4

## Statutes and Legislative Materials

9 U.S.C. § 402...................................................................... 1

**Statement of the Grounds for Rehearing *En Banc***

The Court should grant *en banc* rehearing because the panel majority's opinion—in a case of first impression—effectively creates a new standard in this circuit in direct conflict with Sixth Circuit and Supreme Court precedent on pleading Title VII cases, as Judge Thapar's dissenting opinion explained.

The majority's decision was the first from this Court construing a new federal statute of broad application, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. § 402, and in deciding when a sexual-harassment claim triggers the Act, the decision departs from the Court's settled law on Title VII. Despite decades of caselaw setting a "high bar" for plaintiffs alleging a hostile-work-environment claim, the panel held that three comments in a one-year period will now suffice to show a "severe or pervasive" atmosphere of harassment. This result, as Judge Thapar noted, "contradict[s] our precedent on severe or pervasive harassment."[1] The majority opinion also contradicts Supreme Court precedent requiring "extreme" conduct by a defendant before a plaintiff may state such a claim. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

The panel's divergence from settled law caused a break with Supreme Court and Sixth Circuit precedent on what allegations suffice to

---

[1] *Bruce v. Adams and Reese, LLP*, 2026 WL 523180, *11 (6th Cir. 2026) (Thapar, J., dissenting). The panel opinion conflicts with a line of published decisions from this Court, including *Nathan v. Great Lakes Water Authority*, 992 F.3d 557 (6th Cir. 2021).

state a claim.[2] Since 2009, the *Twombly/Iqbal* standard of plausibility, requiring plaintiffs to plead sufficient factual detail on each element of a claim, has applied to all civil cases, and this Court examines Title VII claims under that rubric.  But the panel, which conceded the inadequacy of Bruce's allegations under Title VII, obscured its departure from that law by crediting precisely what the Supreme Court requires courts to disregard: conclusory statements that do little more than recite the elements of a claim.  The majority allowed the phrase "persistent, ongoing, and continued" to serve as a substitute for specific allegations of pervasive behavior, yet as Judge Thapar pointed out, such a formulaic description does not satisfy the plausibility standard in Title VII cases, and it should not be enough to render an arbitration clause unenforceable under the EFA Act.

In sum, the panel opinion warrants *en banc* review to correct its contradiction of Sixth Circuit and Supreme Court precedent in the context of a new but oft-invoked federal statute on arbitration, especially since the opinion will affect all future sexual-harassment claims and the viability of employer's arbitration agreements.

The Court has not previously expedited the matter for review.

---

[2] Including *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470 (6th Cir. 2020) and *Boxill v. O'Grady*, 935 F.3d 510 (6th Cir. 2019).

# Argument

1.    **The majority's opinion directly conflicts with Sixth Circuit and Supreme Court precedent on hostile-work-environment claims under Title VII.**

A.    *This Court's law on the "high bar" plaintiffs must clear to state a hostile-work-environment claim has been consistent for decades—until now.*

Plaintiffs alleging a hostile work environment as part of a Title VII sexual-harassment theory have long had to show, among other things, that they were subjected to harassment "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Nathan v. Great Lakes Water Authority*, 992 F.3d 557, 565 (6th Cir. 2021) (citing caselaw).  This severe-or-pervasive element of the claim has a "subjective prong and an objective prong," and to determine if a workplace is "objectively hostile," this Court considers "all the circumstances."  *Id.* at 568 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).

Those circumstances include:

- The frequency of the alleged conduct;

- Its severity;

- Whether it is physically threatening or humiliating or a "mere offensive utterance"; and

- Whether it unreasonably interferes with an employee's performance.

*Id.* at 568 (quoting *Harris*).

This Court's cases on what sort of conduct satisfies the severe-or-pervasive element demonstrate that until this year, the Court has meant

3

what it says: a defendant's actions must be either severe or pervasive enough to alter the conditions of employment before a plaintiff may state or prove this kind of claim.  As the Court explained recently, the severe-or-pervasive standard "stands as a core requirement" in hostile-work-environment claims, and the standard "remains a high bar" in this circuit. *Kellar v. Yunion, Inc.*, 157 F.4th 855, 872-73 (6th Cir. 2025); *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 485-86 (6th Cir. 2020).

Reviewing this Court's cases on the pervasiveness or frequency of harassment, the *Nathan* decision illustrates how high that bar is.  In *Nathan* itself, five instances of sex-based harassment over a roughly 15-month period were insufficient.  992 F.3d at 568-69.  The Court considered comparable facts from other cases, including "a single battery coupled with two merely offensive remarks" over six months and "fifteen incidents" of "mostly offensive utterances" over two years, and to an example of what *would* suffice: more than a dozen incidents, "many of which involved sexually aggressive behavior," over one year.  *Id.*[3]

*Nathan* broke no new ground.  Indeed, in similar hostile-work-environment claims, this Court has "established a relatively high bar" for what is "actionable," holding that a "handful of offensive comments" and "an offensive meeting over a two-year period" does not "clear that bar." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017).  The *Phillips* Court

---

[3] Citing *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000); *Clay v. UPS, Inc.*, 501 F.3d 695 (6th Cir. 2007); and *Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir. 1999).

4

reviewed caselaw indicating that no hostile work environment is shown by mere offensive comments, or comments and a bigoted display, or even "fifteen racially-motivated comments" over a two-year period. *Id.* (collecting cases).

The *Nathan* decision also demonstrates how high the hurdle is on the severity element, recounting caselaw holding that "several inappropriate jokes" and a "verbal sexual advance" with "isolated comments" about a plaintiff's attire were not enough, and that even three instances of "physically invasive conduct . . . coupled with repeated unwanted sexual advances" were not severe or pervasive enough. 992 F.3d at 569.[4]

These decisions prove that this Court has rigorously enforced the high standard governing Title VII claims, refusing to allow them based on "isolated incidents" or "occasional offensive utterances," which "do not rise to the level required to create a hostile work environment." *Khalaf*, 973 F.3d at 486; *Kellar*, 157 F.4th at 873 (noting that "simple teasing" and "offhand comments" are not enough). As this Court said: "To hold otherwise would risk changing Title VII into a code of workplace civility, a result we have previously rejected." *Khalaf*, 973 F.3d at 486 (quoting *Grace v. USCAR*, 521 F.3d 655 (6th Cir. 2008)).

These examples and the explicitly high standard emphatically demonstrate that in this circuit, a handful of offensive comments, without

---

[4] Citing *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000) and *Bowman v. Shawnee State University*, 220 F.3d 456 (6th Cir. 2000).

physical threat, sexual advance, or unwelcome touching, are neither severe nor pervasive as a matter of law.  *See, e.g.*, *Nathan*, 992 F.3d at 568-70.

B.     *Sixth Circuit law was, until this opinion, in accord with Supreme Court precedent.*

The caselaw outlined above was built on Supreme Court precedent about how courts should police hostile-work-environment claims, weeding out those too weak to show an abusive workplace.  In *Faragher v. City of Boca Raton*, the Supreme Court exposited its earlier *Harris* decision as to the objective element of what is "sufficiently hostile or abusive," and the Court stated a simple rule: "simple teasing," "offhand comments," or "isolated incidents (unless extremely serious) **will not** amount to discriminatory changes" in employment.  524 U.S. 775, 788 (1998) (emphasis added).  The Court described its standards as "sufficiently demanding" to stop Title VII from becoming, as noted above, a "general civility code."  *Id.* (quoting caselaw).  By applying a demanding standard, courts will "filter out complaints" that only attack the "ordinary tribulations of the workplace," like the "sporadic use of abusive language, gender-related jokes, and occasional teasing."  *Id.* (citing authorities).

The Court summed up the law: "We have made it clear that **conduct must be extreme** to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view."  *Id.*

(emphasis added); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993). And so did this Court—until the opinion here.

C.    *The panel has broken with this Court's standard for severe or pervasive conduct, and if not corrected, in this circuit three comments will now violate Title VII and allow plaintiffs to avoid arbitration.*

The "filter" the Supreme Court spoke of, guarding against claims built on sporadic offensive remarks, no longer operates in the Sixth Circuit. The panel's error rests on both a misreading of the record and a mistake of law in rejecting settled precedent.

First, the panel interpolates allegations into Bruce's complaint that are not there, stating that Pinson "repeatedly" made certain comments to Bruce. *Bruce v. Adams and Reese, LLP*, 2026 WL 523180, *2 (6th Cir. Feb. 25, 2026). But Bruce's complaint does not allege this. Bruce never claimed that Pinson "repeatedly" made either cited remark, nor does her complaint allege how often he said something in her presence. *See* RE 18, Page ID 532-33. Bruce offered no allegations from which one could infer how often Pinson made offensive comments during the year that Bruce was employed. *See generally* RE 18. As Judge Thapar's dissent noted, Bruce's complaint "alleges only three specific comments over her year of employment." *Bruce*, 2026 WL 523180, *12 (Thapar, J., dissenting); RE 18, Page ID 532-33.

The panel's mistake of law was its lowering of what had been a rigorous hurdle for plaintiffs to clear. Eschewing precedent, the panel declared that a plaintiff may "meet her burden of showing that such

conduct was pervasive **by asserting that it was 'ongoing,' 'commonplace,' and 'continuing,'**" and need not "recount each and every specific instance" of such comments. *See id.* at \*5 (punctuation omitted; emphasis added) (citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321 (6th Cir. 2008)).[5]

That is not the law of this circuit and cannot be squared with Supreme Court caselaw on Title VII. This Court examines the frequency and nature of comments themselves, *not* how a plaintiff characterizes them with descriptive glosses like "ongoing" or "continuing." While the panel claimed to "gather and infer from Bruce's complaint" that Pinson "consistently and continually directed sexualized comments at her," *see id.* at \*6, this Court's cases do not countenance a hostile-work-environment claim built on only three remarks in a year. Indeed, allowing a claim to go forward on such scant allegations amounts to the undoing of this Court's careful adherence to the Supreme Court's standard of "extreme" conduct and commits this Court to a far lower bar than it has ever described, as Judge Thapar points out: "The majority first disregards the 'high bar' that Title VII sets for hostile-workplace claims. . . . The majority's mistakes **contradict our precedent** on severe or pervasive harassment." *Id.* at \*11 (emphasis added).

---

[5] *Hawkins* was a pre-*Iqbal* decision. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). And the panel presents a false dichotomy, as neither Adams and Reese nor Title VII precedent have demanded that a plaintiff plead every single event of harassment.

Yet the panel, perhaps sensing the vulnerability of its decision, obscured its departure from Title VII law by disregarding Supreme Court and Sixth Circuit precedent on how courts review complaints.

2.    **The panel relied on allegations that this Court and the Supreme Court insist must be disregarded, and its decision will lead to conflicting standards governing Title VII claims and arbitrability.**

The plausibility standard is well understood.  A plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*).  Under that rule, "labels and conclusions" or a "formulaic recitation of the elements of a clause of action" are not enough.  *Id.*  "Nor does a complaint suffice," the Court continued, if it offers only "naked assertions" without "further factual enhancement."  *Id.* (internal punctuation omitted).  After all, it is "factual content," not labels, that allows courts to "draw the reasonable inference" of liability.  *See id.*  Plausibility does not require a plaintiff to recount "each and every" possible event (as the panel notes), but it does "ask[] for more than a sheer possibility" of unlawful conduct.  *See id.*; *see also Bruce*, 2026 WL 523180 at *7.

What kinds of allegations are deemed conclusory?  *Iqbal* provides guidance.  Allegations that defendants "knew of, condoned, and willfully and maliciously agreed to subject" a plaintiff to harsh confinement "as a matter of policy, solely on account of" his "religion, race, and/or national

origin," were held to be "bare assertions" that amounted to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id.* at 680-81. Those allegations were "conclusory and not entitled to be assumed true." *Id.* at 681.

This Court has faithfully applied the plausibility standard in civil cases, including Title VII cases. *See, e.g.*, *Fluker v. Ally Fin., Inc.*, 2025 WL 1827747, *3 (6th Cir. 2025) (finding a statement that a defendant "called his cell phone using an automatic telephone dialing system" a mere recitation of the elements of a TCPA claim); *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 482-83 (6th Cir. 2020) (rejecting as "too conclusory" allegations that defendants "falsely represented the character, amount, or legal status of" dues and "wrongly added charges" to their debt); *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (finding, in a hostile-work-environment claim, that allegations of defendants' "facilitation" of "a continuing hostile work environment" were not enough and deeming conclusory an allegation that a defendant was "hostile and intimidating to her personally"); *White v. Coventry Health & Life Ins. Co.*, 680 F. App'x 410, 415 (6th Cir. 2017) (as cited in *Boxill*) (dismissing "naked assertions" that a plaintiff suffered "from harassment, discrimination, intimidation, berating and a hostile work environment"); *Handy-Clay v. City of Memphis*, 695 F.3d 531, 541 (6th Cir. 2012) (finding insufficient a plaintiff's allegations of "retaliation" or "workplace abuse").

These cases show the "working principle" that courts do not accept as true "legal conclusions" or "threadbare recitations" of the elements of a claim, *Iqbal*, 556 U.S. at 678, and this Court has until now abided by that rule.  The Court's *Bates* opinion, for example, portrays the kinds of questions that weak allegations raise but do not answer.  Though plaintiffs alleged that defendants had "falsely represented the character, amount or legal status" of their delinquent dues, had "held the cashier's checks" plaintiffs had paid, and had "wrongly added charges to their debt," this Court found such statements "too conclusory" to show "specific actions." 958 F.3d at 482-83.  The Court's questions drove the point home:

> What was the false representation? When did it occur? Who made it? How was the holding of the checks the 'collection' of a debt? Who held the checks? What were the illegal charges? Who added them? Why were they illegal? *Id.* at 483.

As the Court noted, threadbare allegations "allow us only to speculate" on these points.  *See id.*

The panel dispensed with this lynchpin of the plausibility standard when it credited the labels and assertions Bruce sprinkled throughout her complaint, even though they raise similar questions as in *Bates*.  The majority refers to allegations of a "consistent pattern" of "sexualized jokes and comments," but beyond the three comments noted above, the panel resorted to adjectives and conclusions in lieu of facts.  Echoing the questions in *Bates*, however, the panel should have insisted that the complaint allege what else was said, or how many times the three specific

comments alleged were repeated, or what Bruce meant by "persistent" or "ongoing." If Pinson made "inappropriate" comments, what were they, and how often were they made? If Pinson "continued sexually harassing" her, how did he do so and how frequently? If Pinson "would" make an offensive remark, does that mean once or once a day? *Bruce*, 2026 WL 523180 at *6 n.1. This circuit's Title VII caselaw distinguishes between two or three comments a year and two or three comments a week.

The majority cited the allegation that Pinson "continued sexually harassing" Bruce on the rare occasions he was in the office, *see* RE 18, Page ID 530, and relied heavily on the statement that his comments were "persistent, ongoing, and continued up until" she was fired. *Bruce* at *6-7. But this means accepting exactly the sort of threadbare recitations that this Court and the Supreme Court reject. The panel should have tested the *factual* allegations of specific instances of harassment. How else could a court determine if harassment is "extreme" or "severe" or "pervasive," without facts showing what was said, how often it was said, and under what circumstances? There is no principled difference between an allegation that harassment was "severe and pervasive" and an allegation that harassment was "persistent, ongoing, and continued." If the former is not enough, the second cannot be either.

Consider this comparison of what the panel accepted and what courts have rejected:

| **Bruce's Assertions** | **Rejected Language from Caselaw** |
|---|---|
| "Despite being regularly out of the office . . . Pinson continued sexually harassing Ms. Bruce when he was in the office." RE 18, Page ID 530 | Defendants "knew of, condoned, and willfully and maliciously agreed to subject [plaintiff]" to harsh confinement "as a matter of policy, solely on account of his religion, race, and/or national origin." *Iqbal*, 556 U.S. at 680-81. |
| "Pinson's inappropriate comments and jokes to and about Ms. Bruce continued to develop while at Adams and Reese." *Id.* at 532. | Defendant "called his cell phone using an automatic telephone dialing system." *Fluker*, 2025 WL 1827747 at *3. |
| "This harassment was persistent, ongoing, and continued up until the day Ms. Bruce was fired . . . ." *Id.* at 536. | Defendants "facilitat[ed]" a "**continuing** hostile work environment," and defendant was "hostile and intimidating to her personally." *Boxill*, 935 F.3d at 520 (emphasis added). |

These comparisons point up the inadequacy of the conclusory statements that the panel allowed as a substitute for allegations of fact. If terms like "ongoing" or "persistent" or "continued" are taken as true at the pleadings stage, then this Court's Title VII doctrine has drifted far from the plausibility standard.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Yet the panel "credits [Bruce's] vague and unsupported generalizations," which cannot "make a complaint plausible." *Bruce*, 2026 WL 523180 at *11 (Thapar, J., dissenting). This

13

Court should grant *en banc* review to reaffirm that in the Sixth Circuit, the plausibility standard cannot be compromised in an effort to lower the high bar this Court imposes on Title VII plaintiffs, especially where, like Bruce, a plaintiff alleges a sexual-harassment theory and invokes the EFA Act to avoid arbitration.

3.    **The panel's disregard of Sixth Circuit law, in a case of first impression under a statute often invoked in Title VII cases, merits *en banc* review to prevent inconsistent legal standards.**

This Court granted *en banc* review in a sex-discrimination case to consider the meaning of "adverse employment action" under Title VII. *See White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 791 (6th Cir. 2004). But the Court noted that "what constitutes severe or pervasive harassment is not at issue." *Id.* at 796. It *is* at issue in this appeal, however, and the full Court should take up the question to clarify the law in this context, which is one of the most frequently alleged types of Title VII violations.[6]

This Court has also granted *en banc* review to correct a panel's holding about which facts permit an inference and whether the majority would "create a new definition" and a new legal rule. *See Bell v. Bell*, 512 F.3d 223, 231 n.2 (6th Cir. 2008). The Court noted that the panel's

---

[6] *See, e.g.*, https://www.eeoc.gov/office-general-counsel-fiscal-year-2024-annual-report#_Toc182953992, (noting that sex-based EEOC suits were the most common type from FY 2020 through FY 2024) (last visited Mar. 11, 2026); https://www.eeoc.gov/data/enforcement-and-litigation-statistics-0 (showing that roughly 20,000 Title VII harassment charges were filed with EEOC **each year** from FY 2022 on) (last visited Mar. 11, 2026).

expansion of the law could have "great" practical effect because of how often that expansion would be used. *See id.* at 234 n.6.

Similar considerations weigh in favor of *en banc* review here. The effect of the panel decision will be to allow plaintiffs to assert hostile-work-environment claims without offering factual allegations that clear this Court's "high bar" for such cases. As in *Bell*, the panel has exceeded what this Court and the Supreme Court have recognized as allegations supporting a "reasonable inference" of something unstated, *see Bruce* at *7, and the opinion effectively creates a new rule, dispensing with the plausibility test and diluting the standard set by this Court's cases, to allow plaintiffs to avoid arbitration.

That result will erode the institutional cohesion of this circuit's law on hostile-work-environment cases and will do so in the context of the new EFA Act, which allows plaintiffs alleging sexual harassment to evade arbitration if they so choose. 9 U.S.C. § 402. The panel opinion will thus doubly tempt plaintiffs to assert meritless Title VII claims that, before now, would not have met the stringent standards for alleging an abusive work environment, and to do so specifically to avoid arbitration clauses entirely, even if their other claims are arbitrable. *See Bruce* at *13 (Thapar, J., dissenting).

Title VII plaintiffs "need more than broad, conclusory statements alleging harassment," but the majority here "effectively tells the plaintiff to plead . . . labels and conclusions, elements and accusations." *Kellar*, 157

F.4th at 875; *Bruce* at *13 (Thapar, J., dissenting).  This Court should take the case *en banc* and close the rift that has opened between Sixth Circuit law and the innovation the panel indulged in here.

## Conclusion

Adams and Reese petitions the Court to grant rehearing *en banc*, reverse the district court's denial of the motion to dismiss and the motion to compel arbitration, and render judgment dismissing the sexual-harassment claim.

Respectfully submitted,

s/ *Aaron G. McLeod*
Aaron G. McLeod
Brent E. Siler
*Counsel for Appellant*

**OF COUNSEL:**
Adams & Reese, LLP
1901 6th Avenue North
Suite 1110
Birmingham, AL 35203
(205) 250-5000
aaron.mcleod@arlaw.com
brent.siler@arlaw.com

## Certificate of Compliance

1.      This document complies with the word limit of Fed. R. App. P. 40(d)(3)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,730 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Equity Text B.

Dated: March 11, 2026

s/ *Aaron G. McLeod*
Of Counsel

## Certificate of Service

I served on March 11, 2026, by means of electronic mail, a true and correct copy of this petition on the Appellee's counsel:

David Blyth Weatherman
The Weatherman Firm
256 Seaboard Lane, Suite E105
Franklin, TN 37067
(615) 538-7555
david@theweathermanfirm.com
*Counsel for Appellee*

s/ *Aaron G. McLeod*
Of Counsel

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

RANDI MARIE BRUCE,

     *Plaintiff-Appellee*,

  *v.*

ADAMS AND REESE, LLP,

     *Defendant-Appellant*.

No. 25-5210

———————————

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:24-cv-00875—Aleta Arthur Trauger, District Judge.

Argued:  December 11, 2025

Decided and Filed:  February 25, 2026

Before:  MOORE, THAPAR, and RITZ, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Aaron G. McLeod, ADAMS AND REESE LLP, Birmingham, Alabama, for Appellant.  David Weatherman, THE WEATHERMAN FIRM, PLLC, Franklin, Tennessee, for Appellee.  **ON BRIEF:**  Aaron G. McLeod, Brent E. Siler, ADAMS AND REESE LLP, Birmingham, Alabama, for Appellant.  David Weatherman, THE WEATHERMAN FIRM, PLLC, Franklin, Tennessee, for Appellee.

 MOORE, J., delivered the opinion of the court in which RITZ, J., concurred.  THAPAR, J. (pp. 22–25), delivered a separate dissenting opinion.

No. 25-5210                 *Bruce v. Adams & Reese, LLP*                 Page 2

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.   This appeal requires us to answer two questions.  The first is one familiar to the federal courts:  Does Randi Marie Bruce's complaint contain sufficient factual material to state a claim—in this case, a workplace sexual-harassment claim—upon which relief can be granted?  The second is an issue of first impression in this court:  Does the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") bar arbitration of each of Bruce's claims against Adams and Reese, LLP ("A&R"), her former employer, or does it apply only to her sexual-harassment claim?  Because Bruce has met Rule 8's pleading standard as to her sexual-harassment claim, and the EFAA bars arbitration of Bruce's entire case, we affirm the district court's decision.

## I.  BACKGROUND

### A.  Statutory Background

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), provides that any agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." *Id.* § 2.  The FAA's text "reflects the overarching principle that arbitration is a matter of contract," and "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  Accordingly, a defendant may move the court in which it is sued to compel arbitration in accordance with a valid arbitration agreement. *Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 797–98 (6th Cir. 2023).

The EFAA, Pub. L. No. 117-90, 136 Stat. 26, *codified at* 9 U.S.C. §§ 401–02, comprises the "chapter 4" referenced in § 2 of the FAA.  It therefore presents an exception to the FAA's rule that arbitration agreements must be enforced according to their terms.  Section 401 of the EFAA defines relevant terms, including "sexual harassment dispute," which "means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal,

Tribal, or State law." 9 U.S.C. § 401(4). Section 402(a), in turn, provides that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." Section 402(b) then states that federal law governs the EFAA's applicability to a suit, and that applicability "shall be determined by a court, rather than an arbitrator."

## B. Procedural Background

Because this case arises in a motion-to-dismiss posture, we recite the facts as alleged in Bruce's operative complaint. *Sturgill v. Am. Red Cross*, 114 F.4th 803, 806 (6th Cir. 2024). Bruce's career, as relevant here, began in 2019 when she was hired by the law firm Waller Lansden Dortch & Davis LLP ("Waller") as a legal assistant in the firm's Liquor Group. R. 18 (Am. Compl. ¶¶ 22–23) (Page ID #498–99). Prior to joining Waller, Bruce, who suffered from a history of childhood abuse, was diagnosed with post traumatic stress disorder, attention deficit hyperactivity disorder, social phobia, persistent depressive disorder, sleep apnea, insomnia, periodic limb movement disorder, and restless leg syndrome. *Id.* ¶¶ 15–18 (Page ID #498).

Bruce's interactions with Rob Pinson, whose behavior is the basis of her sexual-harassment claim against A&R, began when she joined Waller, where he was an attorney in the Liquor Group. *Id.* ¶¶ 23–25 (Page ID #499). While Bruce was employed at Waller, Pinson made repeated overtures to her, requesting she join him for social outings such as concerts or drinks. *Id.* ¶¶ 288–331 (Page ID #525–30). He was often overbearing, and Bruce had to reject him multiple times before he would relent. *Id.* ¶¶ 296, 300, 303 (Page ID #526–27). During her time at Waller, Bruce was accepted to the Nashville School of Law. *Id.* ¶ 309 (Page ID #528). When she texted Pinson to let him know, he replied by saying that "All those handjobs [he] gave really paid off!" and joking about how much his wrist hurt. *Id.* (alteration in original). Bruce was temporarily laid off from Waller during the COVID-19 pandemic and rejoined the firm in April 2021. *Id.* ¶ 310–12 (Page ID #528). After her return, Pinson continued to ask her out and even interrupted her at a restaurant during a date with someone else. *Id.* ¶¶ 313–16 (Page ID #528–29).

In March 2022, Waller promoted Bruce to the role of paralegal in the Liquor Group. *Id.* ¶ 31 (Page ID #499). That May, the Liquor Group, including Bruce and Pinson, switched firms and joined A&R. *Id.* ¶ 22 (Page ID #498–99). Prior to the transfer, Brooke Ponder, A&R's office manager, interviewed Bruce with Pinson present. *Id.* ¶¶ 43–44 (Page ID #500–01).

After the Liquor Group joined A&R, Pinson was not regularly in the office, but he "continued sexually harassing Ms. Bruce when he was in the office," "making sexual comments and jokes to and about Ms. Bruce, as well as making inappropriate comments about Ms. Bruce's appearance, clothing, and private life." *Id.* ¶¶ 334–35 (Page ID #530). This included "inappropriate comments related to [Bruce's December 2022] engagement and [her] relationship" with her fiancé. *Id.* ¶ 357 (Page ID #532). Due to Pinson's continued sexualized comments and how "uncomfortable" they made her, Bruce "went out of her way to avoid him" where possible. *Id.* ¶ 336 (Page ID #530–31). Pinson's comments and jokes occurred in "work-related conversations" with Bruce, and "in team meetings at Adams and Reese." *Id.* ¶¶ 358–59 (Page ID #532). They included:

- Repeatedly suggesting "[l]et's have Randi go down there in a short skirt." *Id.* ¶ 360 (Page ID #532).
- Repeatedly saying "Hoe no" instead of "Oh no" when talking to Bruce. *Id.* ¶ 361 (Page ID #533).
- Commenting about "how 'hot' it would be to see Ms. Bruce and another paralegal engaging in sexual acts on his desk." *Id.* ¶ 362 (Page ID #533).

Bruce's complaint also includes two Americans with Disabilities Act ("ADA") claims (Counts 1 and 2), which focus on A&R's failure to accommodate (or engage in an interactive process regarding) her need to take sedatives to sleep, which made it difficult for her to wake up or arrive at the office in a timely manner. *Id.* ¶¶ 363–82 (Page ID #533–34). At Waller, Bruce's schedule "allow[ed] her the flexibility of what time she clocked in and out." *Id.* ¶ 41 (Page ID #500). She continued on a flexible schedule when she joined A&R in May 2022, but by October she was told her communication was inadequate, and she was placed on a fixed schedule. *Id.* ¶¶ 55–56 (Page ID #501–02). That worked for a while, but things changed for the worse in March 2023 when Bruce began experiencing a delayed response to her sedative and frequently arrived late. *Id.* ¶¶ 62–63 (Page ID #502). This culminated in a meeting with Ponder, Pinson,

No. 25-5210                 *Bruce v. Adams & Reese, LLP*                 Page 5

and another attorney, during which Ponder told Bruce she could be terminated if she arrived late again and asked Bruce to sign a memo agreeing that her behavior violated a November 2022 "corrective action plan." *Id.* ¶¶ 65, 73–75 (Page ID #502–03). The meeting gave Bruce a panic attack and severe anxiety. *Id.* ¶¶ 82–83 (Page ID #504). From there, Bruce filed a report with human resources, *id.* ¶¶ 139–49 (Page ID #509–10), and HR requested extensive information from Bruce's physician, *id.* ¶¶ 195–202 (Page ID #514–16). Bruce attempted to change her sedative medication, but the new one was ineffective. *Id.* ¶¶ 221–23 (Page ID #519). After a couple more late arrivals, Ponder again informed Bruce she was in violation of A&R's policy. *Id.* ¶¶ 247–48 (Page ID #522). On May 11, 2023, Bruce, then in in the middle of efforts to work with her doctor to communicate with A&R, arrived late again and was terminated. *Id.* ¶¶ 256–72 (Page ID #523–24).

Bruce filed this suit a little over a year later. R. 1 (Compl.) (Page ID #1–44). After A&R moved to dismiss Bruce's sexual-harassment claim and to compel arbitration of her ADA claims, Bruce filed her amended complaint. R. 13 (Mot. to Compel Arb.) (Page ID #79–81); R. 15 (Mot. to Dismiss) (Page ID #287–89); R. 18 (Am. Compl.) (Page ID #496–539). A&R filed a second motion to dismiss Bruce's sexual-harassment claim and a supplemental memorandum in support of its motion to compel arbitration. R. 21 (Second Mot. to Dismiss) (Page ID #544–47); R. 23 (Supp. Mem.) (Page ID #748–51). Several months later, the district court denied A&R's pending motions, finding that Bruce had adequately stated a claim for sexual harassment and that the EFAA precluded arbitration of her entire case, including Bruce's ADA claims. R. 29 (Mem. Op.) (Page ID #776–802); R. 30 (Order) (Page ID #803). Invoking its right to interlocutory review under the FAA, A&R appealed. R. 31 (Notice of Appeal) (Page ID #804–05).

## II. JURISDICTION

"Although neither party has questioned our jurisdiction over this appeal, we have a duty to assure ourselves of our jurisdiction in every case." *In re Salas*, 160 F.4th 810, 813 (6th Cir. 2025). This case arrives to us in an interlocutory posture, with no final decision having been entered, so 28 U.S.C. § 1291 cannot provide us with jurisdiction. Here, A&R has appealed the district court's order denying its motions to dismiss and to compel arbitration. R. 31 (Notice of Appeal at 1) (Page ID #804). The FAA, however, allows for an appeal from "an order . . .

denying an application [to compel arbitration].”   9 U.S.C. § 16(a)(1)(C).   Although this jurisdictional provision does not necessarily provide jurisdiction over “‘all aspects’ of [an] order denying [a] motion to compel arbitration,” it does “allow[] us to review decisions that prevented the district court from compelling arbitration.”  *Schnatter v. 247 Grp., LLC*, 155 F.4th 543, 553 (6th Cir. 2025).   The district court here found, and the parties agree, that “if the sexual harassment claim is subject to dismissal under Rule 12(b)(6), the remaining claims under the ADA will be subject to arbitration.”  R. 29 (Mem. Op. at 2) (Page ID #777).  That is, the finding that Bruce stated a sexual-harassment claim was necessary to the district court’s denial of A&R’s motion to compel.   Because the district court’s ruling on A&R’s motion to dismiss Bruce’s sexual-harassment claim “supplied the basis for the district court’s denying [the] motion to compel arbitration,” we have “jurisdiction under § 16(a) to review [that] finding” as part of this interlocutory appeal.  *Schnatter*, 155 F.4th at 554.

### III.  ANALYSIS

**A.  Standard of Review**

We review de novo a district court’s decision on a motion to compel arbitration under the FAA.  *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025).   And because “the district court base[d] its denial of [the] motion to dismiss for failure to state a claim purely on the legal sufficiency of the plaintiff’s case, we review the decision de novo.”  *Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 865 (6th Cir. 2000) (italics omitted).

To grant a motion to compel arbitration under the FAA, a “district court must assure itself that (1) the parties agreed to arbitrate; (2) the claims asserted fall within the scope of the arbitration agreement; and (3) Congress did not intend for those claims to be non-arbitrable.”  *Memmer*, 135 F.4th at 404.  Only the third prong of this test is at issue here.  A&R included with its motion to compel arbitration a declaration from its director of human resources, which in turn attached a 2022 arbitration agreement between A&R and Bruce.  R. 14-1 (Soileau Decl. ¶¶ 2–4) (Page ID #100).  That agreement provides in relevant part that “any and all claims, disputes or controversies arising between [Bruce and A&R] . . . arising out of, in connection with, incidental to, and/or directly resulting from [Bruce’s employment] . . . shall be decided by binding

arbitration, which shall be the sole and exclusive procedure for resolution of any such dispute." *Id.*, Ex. 1 (Page ID #102). Because the parties entered into this agreement and Bruce's claims arise out of and relate to her employment with A&R, the first two prongs of the test outlined in *Memmer* are met. A&R's motion to compel, therefore, presents only a question of law: whether the arbitration agreement is unenforceable "as otherwise provided in [the EFAA]." 9 U.S.C. § 2.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, "a short and plain statement of the claim" sufficient to "give the defendant fair notice of what the . . . claim is and the grounds on which it rests" is enough, and a complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555 (quoting and citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). We therefore "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009)).

**B. Motion to Dismiss**

**1.**

We begin with an explanation of why A&R's motion to dismiss and the standard under Federal Rule of Civil Procedure 12(b)(6) are central to this appeal. To invoke the EFAA's safe harbor, a plaintiff must "allege[] conduct constituting a sexual harassment dispute," 9 U.S.C. § 402(a), and a sexual harassment dispute is one "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," *id.* § 401(4). The EFAA, however, does not itself define what it means for a plaintiff to "allege" such a dispute.

A&R argues (and the district court found) that the term "alleges" should be understood in accordance with the plausibility pleading standard, as articulated in *Twombly* and *Iqbal*, which a

No. 25-5210                 *Bruce v. Adams & Reese, LLP*                 Page 8

plaintiff must meet to avoid dismissal of her claim on a Rule 12(b)(6) motion such as here. D. 16 (Appellant's Br. at 14–18); R. 29 (Mem. Op. at 2 & n.2 (Page ID #777)).  This represents the prevailing view of federal district courts that have analyzed the EFAA.  *See, e.g.*, *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) ("[T]he term 'alleged' as used in § 401(4) is best read to implicitly incorporate the plausibility standard."); *Smith v. Boehringer Ingelheim Pharms., Inc.*, No. 3:24-cv-01266, 2025 WL 2403042, at *5–6 & n.13 (D. Conn. Aug. 19, 2025); *Mangum v. Ross Dress for Less, Inc.*, 777 F. Supp. 3d 519, 528 (E.D.N.C. 2025).  At least one court, however, has parted ways with the analysis in *Yost* and required only "that the conduct must be actually alleged and with sufficient specificity that the court is able to determine the law that is applicable and that there is a real and nonfrivolous reason to believe that the conduct violates that law against sexual harassment."  *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 542 (S.D.N.Y. 2024) (applying the standard outlined in *Bell v. Hood*, 327 U.S. 678 (1946), for determining federal-court jurisdiction).

For two reasons, we leave for another day the question of whether the *Yost* standard (federal pleading standard), the *Diaz-Roa* standard (*Bell v. Hood*'s jurisdictional standard), or some other standard represents the correct interpretation of the EFAA.  First, answering the question is unnecessary to resolve this case because, as we hold below, Bruce's sexual-harassment claim passes the higher bar proposed by the *Yost* court and others.  *See Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009) (declining to decide between legal standards where plaintiff prevailed "under either standard").  Second, Bruce has never argued that any lower standard applies.  In her response to A&R's motion to compel arbitration, she argued simply that arbitration could not be compelled "[s]hould the [c]ourt deny Adams and Reese's motion to dismiss."  R. 25 (Resp. to Mot. to Compel at 3) (Page ID #761).  Bruce adopted the same approach on appeal and does not contest that the Rule 12(b)(6) pleading standard applies. D. 16 (Appellee's Br. at 8–15).  Bruce has therefore forfeited any argument to the contrary.  *See Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) ("As a general rule in this Circuit, arguments raised for the first time on appeal are forfeited." (quoting *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015)).

**2.**

We turn, then, to Bruce's sexual-harassment claim, which she frames as a hostile-work-environment claim under Title VII.  To prove her hostile-work-environment claim, Bruce must ultimately "show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).  That is, those are the five elements of proof that comprise a plaintiff's prima facie case under the *McDonnell Douglas* burden-shifting framework, which applies at summary judgment.  *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).  After Bruce has had the opportunity to conduct discovery, therefore, she must identify facts in the record supporting each of the five elements. We do not, however, apply the *McDonnell Douglas* burden-shifting standard when, as here, we consider allegations of harassment at the pleading stage.  *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("[T]he prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement." (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002))).  For our purposes the question is simply whether Bruce's complaint "allege[s] sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Bruce was subjected to a hostile work environment.  *Id.* at 610 (quoting *Iqbal*, 556 U.S. at 678, 679).

A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklifts Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  "[T]he conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph*, 453 F.3d at 733.  Although courts have sometimes used the language "severe '*and*' pervasive," our caselaw is clear that "'severe *or* pervasive' is properly considered in the disjunctive." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (emphasis added); *see also Berryman v. Supervalu Holdings, Inc.*, 669 F.3d 714, 717 n.2 (6th Cir. 2012).  A plaintiff need

not, therefore, necessarily demonstrate the existence of severe conduct if she demonstrates that the sexually charged conduct at issue is sufficiently pervasive. In determining whether sexualized commentary pervades a plaintiff's workplace, we consider, *inter alia*, its "frequency," "whether it is . . . humiliating," and "whether it unreasonably interferes with an employee's performance." *Harris*, 510 U.S. at 23. Even at summary judgment, a plaintiff may meet her burden of showing that such conduct was pervasive by asserting that it was "'ongoing,' 'commonplace,' and 'continuing,'"—she need not, that is, "recount" each and every "specific instance[]" of such comments. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)).

We begin our consideration of Bruce's claim by noting that we do not rely on any allegations regarding Pinson's conduct at Waller. Rather, we consider as relevant only those actions alleged to have occurred when she and Pinson worked at A&R. Bruce's complaint and her briefing before this court, by contrast, place considerable weight on certain of Pinson's actions during the time that he and Bruce worked at Waller. *See* D. 19 (Appellee's Br. at 3–4, 12–13). The district court disregarded these allegations, finding that they "cannot . . . be attributed to A&R." R. 29 (Mem. Op. at 15) (Page ID #790). We follow suit and hold that we cannot consider allegations regarding Pinson's behavior *before* he and Bruce worked at A&R. After all, Bruce is proceeding against A&R on a theory of vicarious liability. *See Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 689 (6th Cir. 2024) ("[T]he employer can be vicariously liable for the supervisor's creation of a hostile work environment if the employer is unable to establish an affirmative defense." (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 429 (2013)). Vicarious liability requires an employment or agency relationship between a defendant and a malfeasor. Restatement (Third) of Agency § 7.03(2) (Am. L. Inst. 2006). A&R thus cannot be held liable for actions Pinson took before he worked there. The same applies on Bruce's end. "To establish her claim under Title VII, [Bruce] must show that [A&R] was her 'employer' within the meaning of the statute." *Nethery v. Quality Care Invs., L.P.*, 814 F. App'x 97, 102 (6th Cir. 2020) (per curiam). But A&R was not Bruce's employer when the harassment at Waller took place. Thus, because A&R was neither Bruce's nor Pinson's employer when they worked at Waller, his conduct while there cannot be used to establish a claim against A&R under Title VII.

Having determined the relevant standards and the relevant allegations, we consider whether Bruce has plausibly alleged conduct sufficiently pervasive to sustain a hostile-work-environment claim. Bruce's complaint outlines a consistent pattern of sexualized jokes and comments directed at her by Pinson throughout her employment with A&R. Although Pinson was not always in the office at A&R, he "continued sexually harassing Ms. Bruce when he was in the office" by "making sexual comments and jokes to and about Ms. Bruce, as well as making inappropriate comments about Ms. Bruce's appearance, clothing, and private life." R. 18 (Am. Compl. ¶¶ 334–35) (Page ID #530). These comments and jokes occurred during "work-related conversations" and "in team meetings," *id.* ¶¶ 358–59 (Page ID #532), and included the repeated suggestion, in the presence of others, "[l]et's have Randi go down there in a short skirt," repeatedly saying "Hoe no" to Bruce instead of "Oh no," and fantasizing aloud about Bruce performing sexual acts on his desk, *id.* ¶¶ 360–62 (Page ID #532–33).[1] Pinson also began, after "Bruce's engagement in December of 2022," to make "inappropriate comments relating to the engagement and Ms. Bruce's relationship." *Id.* ¶ 357 (Page ID #532). Pinson's comments were "persistent, ongoing, and continued up until the day Ms. Bruce was fired." *Id.* ¶ 397 (Page ID #536). During this time, Pinson also "gave Ms. Bruce a $750 bonus from his personal finances." *Id.* ¶ 33 (Page ID #499). This conduct affected Bruce's ability to work as a member of the Liquor Group, as she "went out of her way to avoid" Pinson, and "hardly spoke to him" by late 2022. *Id.* ¶¶ 336–37 (Page ID #530–31).

Viewed in the light most favorable to Bruce and drawing all inferences in her favor, these facts plausibly allege conduct "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 67). We gather and infer from Bruce's complaint that Pinson, who was among Bruce's supervisors and responsible for her employment at A&R, consistently and continually directed sexualized comments at her in the presence of other employees at A&R. Or in *Harris*'s terms, Pinson "frequen[tly]" and regularly "humiliat[ed]" Bruce, thereby "interfere[ing] with" her ability to perform her job as a member of the Liquor Group. *Id.* at 23. We may not, in

---

[1] As discussed below, we infer from the complaint's use of the language "would say" to describe Pinson's comments and the allegation that his comments were "persistent [and] ongoing" that his behavior was not confined to a handful of discrete incidents. *Id.* ¶¶ 360–61, 397.

construing Bruce's amended complaint, leave behind our "judicial experience and common sense" in inferring "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.  And it is certainly *plausible* that a young female paralegal would be humiliated and intimidated, and that her performance would be affected, by persistent suggestions from a supervisor that she keep clients happy by visiting them "in a short skirt," that she is a "[h]oe," and that it would be "hot" if she had sex on a desk in the office—not to mention his delivery of an unsolicited $750 "bonus" from his personal funds.  R. 18 (Am. Compl. ¶¶ 33, 360–62) (Page ID #499, 533).  Because Bruce's complaint "allege[s] sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Bruce was subjected to a hostile work environment, her sexual-harassment claim survives A&R's motion to dismiss. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678, 679).

To be sure, and as A&R is keen to point out, "occasional . . . offensive utterances" that are not "physically threatening or humiliating" do not render a work environment hostile and discriminatory.  *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008) (citation omitted).  A&R characterizes Bruce's complaint as setting forth just "two discrete, one-time comments in a one-year period."  D. 16 (Appellant's Br. at 25).  We agree with A&R that such a complaint would be subject to dismissal because a hostile-work-environment claim premised on three or four instances of harassing comments over an extended period of time is likely to fail unless those comments are sufficiently severe to overcome their infrequency.  *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (claim based on "three relatively isolated incidents over a period of approximately two and a half years"); *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (four statements over a period of two years); *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 841 (6th Cir. 2024) (four instances over two and a half years).

But drawing all inferences in Bruce's favor, Pinson's conduct was much more frequent.  Although Pinson's office attendance during Bruce's year at A&R was inconsistent, he "continued sexually harassing [her] when he was in the office."  R. 18 (Am. Compl. ¶¶ 334) (Page ID #530).  His comments were "persistent, ongoing, and continued up until the day Ms. Bruce was fired."  *Id.* ¶ 397 (Page ID #536).  These allegations are sufficient to allow a plausible inference that Pinson's comments occurred more than a handful of times.  That Bruce does not

recount with specificity each instance of Pinson's behavior is beside the point, as requiring her to do so would impose a higher burden than is required even at summary judgment. *Hawkins*, 517 F.3d at 333–34.**2**  Moreover, A&R's argument that the specific comments Bruce *does* allege are "discrete, one-time comments" misreads her complaint.  Paragraphs 360 and 361 of Bruce's amended complaint state that "Pinson *would say*, 'Let's have Randi go down there in a short skirt,'" and that "Pinson *would say* 'Hoe no.'"  R. 18 (Am. Compl. ¶¶ 360–61) (Page ID #532–33) (emphasis added).  The natural reading of the complaint's use of "would" is that these comments were regular and habitual, not unique or "one-time."  *See Would*, Merriam-Webster, https://www.merriam-webster.com/dictionary/would (last visited Jan. 21, 2026) ("used in auxiliary function to express custom or habitual action").  This is particularly true when these paragraphs are placed in contrast with ¶ 362, which plainly alleges such a discrete, one-time comment.  *Id.* ¶ 362 (Page ID #533)  ("On April 19, 2023, Mr. Pinson made sexually suggestive comments about how 'hot' it would be to see Ms. Bruce and another paralegal engaging in sexual acts on his desk.").

Notably, only one of this court's cases on which A&R relies, *Ogbonna-McGruder*, arose in a motion-to-dismiss posture.  *Ogbonna-McGruder*, 91 F.4th at 837.  This means, of course, that in every other case the complaint survived a motion to dismiss, or the defendant decided not to file one.  *Ogbonna-McGruder*, moreover, is a far cry from the facts here.  The majority of the plaintiff's allegations in that case—"that she was denied the opportunity to draft a grant proposal and teach summer courses, received low evaluations, was replaced by a white adjunct professor, and was reassigned to teach public management courses"—were held not to "constitute 'harassment' contributing to the hostile work environment claim" at all.  *Id.* at 840.  Rather, there were just "four incidents" that "could constitute harassment to support [that] claim" over a two-and-a-half-year period.  *Id.* at 840–41.  And those alleged incidents all involved non-racialized "comments about [the plaintiff's] teaching abilities and qualifications" (the plaintiff's claim in *Ogbonna-McGruder* was based on race), which were much less inherently inflammatory than those at issue here.  *Id.* at 841.  Whereas a statement "denigrat[ing] [someone's] teaching

---

**2**To require Bruce to state the contents of each of Pinson's actions that contribute to the hostile work environment would also impose a heightened particularity standard on her pleading outside of the limited contexts in which Congress has required as much.  *See Kolominsky v. Root, Inc.*, 100 F.4th 675, 683–84 (6th Cir. 2024).

abilities" or "stat[ing] that she was not qualified to teach political science courses," *id.* at 840, does not directly implicate a protected characteristic such as race or gender, Pinson's consistent comments towards Bruce were indisputably sexually charged. Had Bruce here alleged just a few isolated incidents of non-sexual offensive comments, we too would struggle to find a plausible hostile-work-environment claim. Because Bruce has gone much further and the well-pleaded facts demonstrate a pattern of humiliating sexualized comments by a supervisor, we hold that she has plausibly alleged a Title VII sexual-harassment claim.

Our dissenting colleague would hold that Bruce has failed to state a hostile-work-environment claim because her complaint does not explicitly describe enough specific incidents of Pinson's conduct. It is not enough, in the dissent's view, for Bruce—in addition to the repeated comments she specifically recounts—to allege that Pinson was continuously "making inappropriate comments about Ms. Bruce's appearance, clothing, and private life," and "inappropriate comments related to [Bruce's] engagement and [her] relationship" with her fiancé. R. 18 (Am. Compl. ¶¶ 335, 357) (Page ID #530, 532).[3] This demand for a detailed telling of each offensive utterance, however, is more than Rule 8 requires. First, such a standard is "incongruous" insofar as it would "require [Bruce], in order to survive a motion to dismiss, to plead more facts than [s]he may ultimately need to prove to succeed on the merits" at summary judgment or at trial. *Swierkiewicz*, 534 U.S. at 511-12.[4] Second, the dissent's argument that the specific contents of each harassing statement are necessary for us to "independently determine" whether they add up to a hostile-work-environment claim, Dissent at 23, would all-but-eliminate

---

[3]The dissent views these allegations as the "labels and conclusions, elements and accusations" that *Iqbal* affirmed are insufficient to state a claim. Dissent at 25 (citing *Iqbal*, 556 U.S. at 678). They are not. Far from constituting a "formulaic recitation of the elements" of a Title VII claim, these portions of Bruce's complaint contain additional factual matter about how Pinson treated her at A&R. *Iqbal*, 556 U.S. 681 (quoting *Twombly*, 550 U.S. at 555). This is in marked contrast to the allegations the *Iqbal* court held to be insufficient, which read more like a set of jury instructions than statements about events occurring in the world. *See id.* at 680–81.

[4]The dissent disagrees with our reliance on *Hawkins* and *Abeita*, claiming that we "clarified" those decisions in *Berryman*. Dissent at 24 n.1 (citing 669 F.3d at 717). But *Berryman*, which cited *Hawkins* approvingly, did nothing to undermine either case. *Berryman*'s unremarkable statement that a plaintiff must "advance[] evidence of harassment that is 'ongoing,' 'commonplace,' and 'continuing,'" does not mark any kind of turning point in our jurisprudence. *Id.* (quoting *Hawkins*, 517 F.3d at 333–34). In *Abeita*, the plaintiff's assertions about sexual comments being "continuing" were part of her testimony, and therefore constituted "evidence of harassment." 159 F.3d at 252. *Hawkins* reaffirmed as much, as well as the fact that a plaintiff's "inability to recount any more specific instances goes to the weight of her testimony, a matter for the finder of facts." 517 F.3d at 334 (quoting *Abeita*, 159 F.3d at 252).

any room for "reasonable inference." *Iqbal*, 556 U.S. at 678. In so doing, it would impose on hostile-work-environment plaintiffs a heightened pleading standard not unlike Rule 9's fraud pleading standard. *See United States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1047–48 (6th Cir. 2023) (noting that under Rule 9, a complaint "must specify the 'who, what, when, where, and how' of the alleged fraudulent scheme" (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006))). Such "[a] requirement of greater specificity for particular claims," however, "'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Swierkiewicz*, 534 U.S. at 515 (quoting *Leatherman v. Tarrant Cnty. Narcotics Intell. & Coordination Unit*, 507 U.S. 163, 168 (1993)). Because Bruce's claim is not among those to which Congress has applied a heightened fact-pleading standard, we adhere to our analysis of the complaint's facts and the reasonable inferences therefrom.

## C.  Motion to Compel Arbitration

Having held that Bruce may proceed to discovery on her sexual-harassment claim, we turn to the impact of that holding on A&R's motion to compel arbitration of Bruce's ADA claims. A&R argues that those claims, which do not themselves fall within the EFAA's definition of a "sexual harassment dispute," must be arbitrated pursuant to the parties' agreement. D. 16 (Appellant's Br. at 28–29). Lower courts interpreting the EFAA, however, have generally held otherwise, finding that "where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA . . . makes pre-dispute arbitration agreements unenforceable with respect to the *entire case* relating to that dispute." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 561 (S.D.N.Y. 2023) (emphasis added) (quoting 9 U.S.C. § 402(a)); *see also Rix v. Polsinelli PC*, No. 23-03062, 2025 WL 2674767, at *7 (D.D.C. Sept. 18, 2025) (collecting cases).[5] The district court adopted this approach, thus finding that the arbitration agreement was unenforceable as to Bruce's entire case, including her ADA claims. R. 29 (Mem. Op. at 26–27) (Page ID #801–02). For the following reasons, we agree.

---

[5]We are aware of just one EFAA decision compelling arbitration of some claims but not others. *Mera v. SA Hospitality Grp., LLC*, 675 F. Supp. 3d 442, 448 (S.D.N.Y. 2023). That decision, however, which was authored by a magistrate judge, was later overturned in relevant part by the district court. *Mera v. SA Hospitality Grp., LLC*, No. 23-cv-3492, 2025 WL 3202080, at *10 (S.D.N.Y. Nov. 17, 2025).

Our interpretation of the EFAA "begins with the statutory text, and ends there as well" if the text is "unambiguous." *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 127 (2018) (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)). "If a term in a statute is undefined, it is interpreted using its ordinary meaning." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016). Section 402(a) reads, in full, as follows:

> IN GENERAL.—Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

At issue here is the scope of § 402(a)'s instruction, upon a finding that a "person" is "alleging conduct constituting a sexual harassment dispute or sexual assault dispute," that a "predispute arbitration agreement . . . shall [not] be valid or enforceable." Section 402(a) tells us that such an agreement is unenforceable "with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."

The operative word here is "case." That is because it is "with respect to a case" that an otherwise-valid arbitration agreement is invalid and unenforceable. 9 U.S.C. § 402(a). All data point clearly in the direction of "case" encompassing a plaintiff's entire suit. Black's Law Dictionary defines "case" as "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity." *Case*, Black's Law Dictionary (12th ed. 2024); *see also Case*, Merriam-Webster, https://www.merriam-webster.com/dictionary/case (last visited Jan. 21, 2026) ("a suit or action in law or equity"). We need look no further than the FAA to find a use of the word "case" in accordance with these definitions, as Section 7 provides for the ability to call witnesses "in [a] case" in arbitration. 9 U.S.C. § 7. The use in Section 7 of the preposition "in" means that "case" makes sense only if read to refer to a proceeding. Other instances of the word "case" in federal law lend further support to this understanding. *See, e.g.*, 28 U.S.C. § 1446 (referring to a "civil action" or "case" in the context of federal removal); *id.* § 1332 (same in context of diversity jurisdiction); *id.* § 636(c)(1) (discussing the referral of a "case" to a United States magistrate judge); Fed R. App. P. 3(c)(5) (referring to "a civil case"). A party does not call a witness "in" a

claim, or count, or cause of action.  This usage stands in contrast to the term "claim," which denotes a singular "demand for money, property or a legal remedy to which one asserts a right"; i.e., a "*claim for relief.*"  *Claim*, Black's Law Dictionary (12th ed. 2024); *see also* Fed. R. Civ. P. 18 ("Joinder of Claims").  Furthermore, our own recent usage is consistent with this distinction: "claims" are the component parts of a "suit," "case," or "action," each of which terms encompasses the entirety of a civil proceeding.  *See, e.g.*, *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 561 (6th Cir. 2021) ("This case involves numerous claims . . . ."); *Lopez v. Foerster*, 791 F. App'x 582, 584 (6th Cir. 2019) ("He filed this action . . . alleging various constitutional claims."); *Capone v. Atl. Specialty Ins. Co.*, 791 F. App'x 595, 595 (6th Cir. 2020) ("Capone thereafter brought this suit, asserting two claims.").

With this understanding of the meaning of "case" in mind, the EFAA's text renders an arbitration agreement "[un]enforceable with respect to" a plaintiff's entire case, or action, and not only with respect to certain claims therein.  9 U.S.C. § 402(a).  And the cases the EFAA shields are those that "relate[] to the sexual assault dispute or the sexual harassment dispute." "Relate" means "[t]o have some connection to; to stand in relation to."  *Relate*, Black's Law Dictionary (12th ed. 2024); *see also Relate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/relate (last visited Jan. 21, 2026) ("to have relationship or connection"). In another context, the Supreme Court held that one thing "relate[s] to" another "if it has a connection with or reference to" that other thing, noting such a definition's accordance with the "ordinary meaning of 'relate to'" and the term's "deliberately expansive" nature.  *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 129 (1992) (citation omitted).  We too have recognized that "relates to" is an expansive term. *United States v. Fields*, 53 F.4th 1027, 1045 (6th Cir. 2022) (comparing the breadth of "relate to or connect with" with the narrower "necessarily entails" (citation omitted)).  When a plaintiff files a case that includes a sexual-harassment claim, that case certainly has "a connection with" and "reference to" the claim. Thus, we hold that a plaintiff's case, such as Bruce's, that contains a plausibly alleged claim of sexual harassment, therefore "relates to" a "sexual harassment dispute," and arbitration may not be compelled under the FAA.  9 U.S.C. § 402(a).

No. 25-5210                    *Bruce v. Adams & Reese, LLP*                    Page 18

"[C]ontextual and structural considerations" lend further support to this interpretation of § 402(a). *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012). Most strikingly, there are three ways in which Congress could easily have drafted the EFAA to protect only sexual-harassment claims and sexual-assault claims themselves from forced arbitration, yet it followed none of these paths.

*First*, Congress could have used the word "claim" instead of "case" in § 402(a). The EFAA's drafters knew well how to use the word "claim," *see* 9 U.S.C. § 401 note, and when Congress deliberately uses different words, we presume those words to "have different meanings." *Tomaszczuk v. Whitaker*, 909 F.3d 159, 166 (6th Cir. 2018); *Johnson,* 657 F. Supp. 3d at 560 ("Congress, in enacting the EFAA, thus can be presumed to have been sensitive to the distinct meanings of the terms 'case' and 'claim.'"). To give the EFAA the same meaning as if Congress used the term "claim" in place of "case" would, therefore, require us to ignore Congress's deliberate choice of words.

*Second*, the canon against surplusage, which reflects "the idea that 'every word and every provision is to be given effect,'" disfavors a narrow reading. *Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012)). Congress could have provided plaintiffs with protection limited to sexual-assault claims and sexual-harassment claims by simply striking the words "a case which is filed under Federal, Tribal, or State law and relates to the" from § 402(a). With the law written as such, an arbitration agreement would simply not "be valid or enforceable with respect to the sexual assault dispute or the sexual harassment dispute." A&R's preferred reading would cause those struck words "to have no consequence," and its reading is therefore disfavored. *Id.*

*Third*, and similarly, Congress could, if intending the result that A&R urges, have copied over language—used in numerous whistleblower-protection statutes—that precludes arbitration only as to individual "disputes" arising under those provisions. *See* 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."); 31 U.S.C. § 5323(j)(2) (same); 7 U.S.C. § 26(n)(2) (same); 12 U.S.C. § 5567(d)(2) (similar); 26 U.S.C. § 7623(d)(5)(B) (similar); 49 U.S.C. § 60129(e)(2) (similar). Under those whistleblower-protection provisions, the bar on

No. 25-5210                    *Bruce v. Adams & Reese, LLP*                    Page 19

forced arbitration applies only to the specific whistleblower claims provided for in each section. Because "Congress opt[ed] not to include a well known and frequently used approach in drafting" the EFAA, we "hesitate to pencil it back in under the guise of interpretation." *Prewett v. Weems*, 749 F.3d 454, 461 (6th Cir. 2014).

Put simply, all indicia in the EFAA's text and statutory structure point in the same direction. "We must presume that Congress 'says in a statute what it means and means in a statute what is says there.'" *Rotkiske v. Klemm*, 589 U.S. 8, 13–14 (2019) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). Because Congress applied the EFAA's bar to arbitration to cases and not claims or causes of action, and did not take obvious alternative paths in its drafting, the district court did not err in denying A&R's motion to compel.

A&R's arguments to the contrary are unavailing. A&R begins by pointing to the FAA's longstanding "presumption in favor of arbitration," which extends "to the claim-by-claim level of detail." D. 16 (Appellant's Br. at 27). This argument misunderstands the nature of the presumption that "any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). This principle does not govern statutory interpretation, but instead stands for the idea that courts, "in applying general state-law principles of *contract interpretation* to the *interpretation of an arbitration agreement* within the scope of the Act" must give "due regard . . . to the federal policy favoring arbitration, and [resolve] ambiguities as to the scope *of the arbitration clause itself* . . . in favor of arbitration." *Volt Info. Servs., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989) (emphases added); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration.").

If this were a case that turned on our interpretation of an arbitration agreement itself, the principle cited by A&R would be relevant. All parties agree, however, that Bruce signed a valid and enforceable arbitration agreement. Moreover, even if the FAA's contract-interpretation principles were to apply to our interpretation of the EFAA's provisions, we could "not . . . reach a result inconsistent with the plain text . . . simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S 279, 294 (2002). Because the EFAA's text

unambiguously precludes arbitration of Bruce's entire case, no presumption could compel a different reading. Finally, A&R's reference to the principle that courts must assess arbitrability on a claim-by-claim basis, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums," simply begs the question. *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (per curiam) (quoting *Dean Witter Reynolds*, 470 U.S. at 217). Because the EFAA's plain language controls, then each claim that is a part of Bruce's case may remain in court, whether we take them claim-by-claim or as a whole.

Nor does the fact that this pro-arbitration construction was "well settled" when the EFAA was enacted require us to read into the EFAA a pro-arbitration statutory purpose. D. 16 (Appellant's Br. at 28–31) (quoting *United States v. Kassouf*, 144 F.3d 952, 957 (6th Cir. 1998)). *Kassouf*, on which A&R relies in contending as much, stands for the principle that "if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Hall v. Hall*, 584 U.S. 59, 73 (2018) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)); *Kassouf*, 144 F.3d at 957 ("[C]ourts will presume that Congress knew of the prevailing law when it enacted the statute."). Therefore, where Congress enacts "similar language" to a statute that "ha[s] been consistently construed" one way, "we may presume that Congress intended" to incorporate that interpretation. *Kassouf*, 144 F.3d. at 958. But A&R does not point to anything in the EFAA's text that hinges on a judicial interpretation of terms or provisions in the FAA, so the "old soil" principle does not apply.

In the course of its "purpose" argument, A&R also appears to raise the practical concern that plaintiffs will abuse the EFAA to avoid arbitration of non-sexual-harassment/abuse claims. D. 16 (Appellant's Br. at 29–30). This policy argument lies far downstream of the EFAA's plain meaning, to which this court must adhere "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Bedford*, 914 F.3d 422, 427 (6th Cir. 2019) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (citation modified)). "[T]he sole function of the courts—at least where the disposition required by [a statute's] text is not absurd—is to enforce it according to its terms." *Id.* (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)).

This is far from the "rare case" in which applying the law's plain meaning leads to an absurd result. The stated purpose of the EFAA, according to the House Report, is to "restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system and are forced to settle their disputes against companies in a private system of arbitration." H.R. Rep. No. 117-234, at 4 (2022). Allowing these "millions of victims" to bring other claims alongside their sexual assault or harassment claims is far from "demonstrably at odds with th[is] intention[]." *Bedford*, 914 F.3d at 427 (citation omitted).

Congress might indeed view the rule we adopt here as *advancing* its intent because a construction of the EFAA that required plaintiffs with both sexual-harassment and other claims to proceed separately in arbitration and court would discourage such plaintiffs from accessing the court system, on the pain of the increased costs and time-commitment in bringing two parallel actions in different fora. Because A&R has not demonstrated that the effects of our holding will contravene Congressional policy, much less sufficiently so that we could disregard the law's plain text, we are not swayed.[6]

## IV. CONCLUSION

In sum, we hold that a where a plaintiff brings multiple claims in a single suit against a party with whom she has an otherwise-valid arbitration agreement, and one of those claims alleges a "sexual assault dispute" or a "sexual harassment dispute," the EFAA renders the arbitration agreement unenforceable with respect to each of the claims that comprise her case. The EFAA therefore permits Bruce to continue to litigate her entire case in federal court, and the district court did not err in denying A&R's motion to compel arbitration of Bruce's ADA claims.

We **AFFIRM** the district court's order and **REMAND** for further proceedings.

---

[6]Even if we humor for a moment A&R's policy argument, however, we are not convinced that dire consequences will flow from our decision. We note that our interpretation of the EFAA has prevailed for years in district courts across the country without any apparent calamitous effect.

———————————

## DISSENT

———————————

THAPAR, Circuit Judge, dissenting.  Under a straightforward reading of this court's Title VII cases, Randi Bruce failed to state a claim against Adams & Reese, LLP (A&R) for a hostile workplace based on sexual harassment.  To reach a different conclusion, the majority ignores our strict standard for hostile-workplace claims and credits Bruce's vague, conclusory allegations— all to let a plaintiff avoid a valid arbitration agreement.  I respectfully dissent.

\*          \*          \*

Bruce's complaint doesn't plausibly allege severe or pervasive harassment establishing a hostile workplace under Title VII.

The majority reaches the opposite conclusion by misapplying Title VII and the federal pleading standard.  The majority first disregards the "high bar" that Title VII sets for hostile-workplace claims.  *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (quotation omitted).  Properly understood, Title VII's "demanding" standard requires a plaintiff to allege harassment so extreme or ongoing that it unreasonably interfered with her work performance.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  To inch Bruce's complaint over this high bar, the majority credits her vague and unsupported generalizations about how frequently her supervisor, Rob Pinson, allegedly harassed her.  But "mere conclusory statements" and "naked assertions devoid of further factual enhancement" can't make a complaint plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The majority's mistakes contradict our precedent on severe or pervasive harassment.

Bruce's complaint alleges only three specific comments over her year of employment at A&R.  She recounts that "Pinson would say, 'Let's have Randi go down there in a short skirt'" and "'Hoe no' instead of 'Oh no' when talking to [her]."  R. 18, Pg. ID 532.  Pinson also allegedly remarked in April that it would be "hot" to see Bruce and another paralegal perform a sex act on his desk.  *Id*. at 533.  These comments are clearly "offensive utterance[s]."  *Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  But "three relatively isolated incidents" over the course of a year—only one of them dated—are too infrequent to be "pervasive."  *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005).  And Pinson's remarks pale in comparison to more overtly sexual, intimidating, and humiliating conduct that wasn't "severe" under Title VII's standard.  *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568–70 (6th Cir. 2021) (collecting cases).  Our precedent is so uniform that even the majority concedes "a hostile-work-environment claim premised on three or four instances of harassing comments over an extended period of time is likely to fail."  Maj. Op. at 12.

Beyond Pinson's three specific comments, Bruce's complaint includes only vague and conclusory allegations that Pinson made "sexual" and "inappropriate" remarks and "continued sexually harassing" her in the office.  R. 18, Pg. ID 530.  The majority accepts that these allegations establish "a consistent pattern of sexualized jokes and comments."  Maj. Op. at 11.  But these are the exact kind of "conclusory statements" and "bare assertions" that we can't accept as true on a motion to dismiss.  *Iqbal*, 556 U.S. at 678, 681.  Bruce tries to round out these allegations by adding information about the topic and timing of the remarks—like that they centered on her appearance or engagement or happened in team meetings.  That's still not enough.  Though we accept Pinson remarked on these topics at these times, Bruce's complaint doesn't give enough "factual content" for us to infer that Pinson's comments actually supported her Title VII claim.  *Id.* at 678.  Without knowing the content of his remarks, we can't independently determine they were sexual, inappropriate, or hostile—and that's what's required to state a claim.

By the same token, we can't accept Bruce's "formulaic recitation" of Title VII's elements.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In particular, the majority relies heavily on Bruce's assertion that Pinson's comments were "persistent, ongoing, and continued" until her firing.  Maj. Op. at 11 & n.1, 12 (quoting R. 18, Pg. ID 536).  But this allegation simply pleads synonyms from our caselaw for the required element of "pervasive" harassment.  *Compare* R. 18, Pg. ID 536, *with Berryman v. SuperValu Holdings, Inc.*, 669 F.3d

714, 717 (6th Cir. 2012).[1]    Without facts to support this claim, we can't credit Bruce's "[t]hreadbare recital[] of the elements of a cause of action," even if she used a thesaurus.  *Iqbal*, 556 U.S. at 678.  After all, if this were our approach, we could save a lot of time by simply accepting that Bruce "faced discrimination based on sex in the form of ongoing sexual harassment."  R. 18, Pg. ID 532.  The majority errs by giving weight to this kind of element-as-allegation pleading.

Absent facts about the timing of Pinson's remarks, the majority turns to grammar.  The majority infers from Bruce's assertion that Pinson "would say" two of his remarks that he made those comments repeatedly and frequently.  Maj. Op. at 11 n.1, 13.  But alleging that Pinson "would say" these remarks doesn't tell us that he said them so often that it transformed A&R into a hostile workplace.  Although the tense could suggest some repetition, plaintiffs still need to back up their implicit allegations with facts for us to *reasonably* infer they've stated a plausible claim.  *See Iqbal*, 556 U.S. at 678; *see also Clark*, 400 F.3d at 351.  And the facts in Bruce's complaint aren't enough to make this inference reasonable.

All of this exposes a central contradiction in the majority's reasoning:  The majority agrees that Bruce can't base her claim on only three specific instances of harassment—and yet the majority doesn't expect Bruce to remember any more.[2]  Indeed, the majority waves away

---

[1]According to the majority, a plaintiff may show pervasive harassment simply by "asserting that [conduct] was 'ongoing,' 'commonplace,' and 'continuing.'"  Maj. Op. at 10 (quoting *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998))).  But the majority errs by relying on *Hawkins* and *Abeita*.  For starters, our circuit has clarified that at summary judgment, a plaintiff must "advance[] evidence" that harassment was pervasive, not simply "assert[]" it was so.  *Compare Berryman*, 669 F.3d at 717, *with* Maj. Op. at 10.  At the same time, the Supreme Court has also substantially tightened federal pleading standards.  So the majority can't just assume *Hawkins*'s and *Abeita*'s view of sufficient evidence translates into the motion-to-dismiss standard.  Nowadays, a plaintiff must plead enough factual matter to substantiate the harassment's frequency, not simply recite *Hawkins*'s and *Abeita*'s magic words.  *Iqbal*, 556 U.S. at 678.

[2]Bruce's complaint recounts numerous specific comments Pinson made to her at a different law firm.  *See* R. 18, Pg. ID 525–30.  The majority is correct that those 42 paragraphs are irrelevant to A&R's liability.  Maj. Op. at 10; *see Nethery v. Quality Care Invs., LP*, 814 F. App'x 97, 102 (6th Cir. 2020) (per curiam).  But it's curious that Bruce can recall the specifics of the harassment that allegedly occurred at that previous law firm but can't recall details of Pinson's more recent comments at A&R.  Of course, when Bruce and Pinson transferred to A&R, Bruce admits that she "hardly spoke" to Pinson, partly because he "rarely made an appearance at the office."  R. 18, Pg. ID 530–31; *see also* R. 1, Pg. ID 36 (stating Pinson was "out of the office 80% of the first year at [A&R]").  That doesn't leave "room for [the] 'reasonable inference'" that Pinson harassed Bruce in a pervasive way at A&R.  Maj. Op. at 15.

No. 25-5210                    *Bruce v. Adams & Reese, LLP*                    Page 25

Bruce's failure to "recount with specificity" when or what Pinson said as simply "beside the point." Maj. Op. at 12–13. It then insists that asking Bruce to allege more than three specific comments somehow imposes the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) or the standard for summary judgment. *Id.* at 15. But what should the plaintiff plead other than specific facts? If the specifics are "beside the point," the majority effectively tells the plaintiff to plead what's left: labels and conclusions, elements and accusations. *See Iqbal*, 556 U.S. at 678.

To hide the implications of its reasoning, the majority repeatedly conflates asking for *more* facts with demanding that Bruce recount "*each* instance of Pinson's behavior," "*each* offensive utterance," or "*each* harassing statement." Maj. Op. at 13, 14 (emphasis added). No one wants her to do that—at least, not now. But somewhere between recounting three comments and every comment lies the line of plausibility. To fall on the right side of that all-important line, a plaintiff must include enough "factual content" for us to infer the defendants created a hostile workplace. *Iqbal*, 556 U.S. at 678. Bruce's complaint recounts three comments, then tosses in some accusations and well-chosen verbs—and thus "stops short of the line between possibility and plausibility." *Id.* (quotation omitted). So the majority errs by allowing her implausible complaint to proceed.

Because Bruce's sexual-harassment claim should be dismissed, her disability claims belong in arbitration. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 588 (S.D.N.Y. 2023). Indeed, the majority, district court, and parties all agree that outcome would follow dismissal. Maj. Op. at 6 ("[I]f the sexual harassment claim is subject to dismissal under Rule 12(b)(6), the remaining claims under the ADA will be subject to arbitration." (quoting R. 29, Pg. ID 777)).

I respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-5210

RANDI MARIE BRUCE,

     Plaintiff - Appellee,

     v.

ADAMS AND REESE, LLP,

     Defendant - Appellant.

 

**FILED**
Feb 25, 2026
KELLY L. STEPHENS, Clerk

Before:  MOORE, THAPAR, and RITZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Kelly L. Stephens, Clerk